[No. S023272. Jan. 21, 1993.]

FRANCIS BROWN, Plaintiff and Appellant, v.
POWAY UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

## COUNSEL

James H. Miller and Douglas A. Stoodt for Plaintiff and Appellant.

Stutz, Gallagher & Artiano, Daniel R. Shinoff, Jack M. Sleeth, Jr., Susan L. Mason, Richard C. Thomas and Sidney A. Stutz for Defendant and Respondent.

John W. Witt, City Attorney (San Diego), Eugene P. Gordon, Chief Deputy City Attorney, Leslie J. Girard, Deputy City Attorney, Fred J. Hiestand, Liebman, Reiner & McNeil and Joseph R. Zamora as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**PANELLI, J.**—Plaintiff sued a public entity to recover for personal injuries after he slipped and fell on public property. The Court of Appeal held that the doctrine of res ipsa loquitur precluded summary judgment for the public entity even though there was no evidence to show how the slippery object came to be on the floor or that the public entity had notice of the hazard. We reverse.

### BACKGROUND

Plaintiff Francis Brown sued defendant Poway Unified School District (hereafter District) after he slipped and fell on the District's property.

Brown, a self-employed computer repairman, was delivering computers to the District's facilities building at 9:30 a.m. on Monday morning. Brown parked his van near a door and, with the help of a District employee, made five trips down a hallway between the van and the room where the computers were stored. On the last trip back to his van, Brown slipped and fell. The employees who helped Brown to his feet found a fresh slice of lunch meat stuck to the sole of his shoe.

Brown sued the District. The ensuing discovery generated declarations or deposition testimony from every person known to have entered the hallway between Friday afternoon, when the floor was swept, and Monday morning, when the accident occurred. These persons included the janitor who swept the floor, the employee who helped Brown unload computers and who had also opened the building earlier that morning, and a maintenance clerk. Although only employees of the District possessed keys to the building, nonemployees were often present. Indeed, three nonemployees had been in the hallway the morning of the accident: Brown, himself; a vendor who was in the building to repair tools; and a school bus driver who also worked for a vendor of telecommunications equipment. No one saw lunch meat on the hallway floor prior to the accident.

Outside the building there was a picnic table where employees sometimes ate their lunches. However, no one had seen anyone eating at the table or in the hallway on the morning the accident occurred.

Based on the uncontradicted evidence, the District moved for summary judgment under Government Code section 835.[1] This statute sets out the conditions under which "a public entity is liable for injury caused by a dangerous condition of its property . . . ." (*Ibid.*) The statute requires a plaintiff to prove, among other things, that either of two conditions is true: "(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (*Ibid.*)

Because there was no evidence that the District had notice of the allegedly dangerous condition, the superior court correctly ruled that the District could not be liable under subdivision (b). (§ 835, subd. (b).) Brown does not challenge this ruling.

The District also moved for summary judgment under subdivision (a), reasoning that there was no evidence to show that an employee of the

---

[1]All further references to statutes are to the Government Code except as noted or as the context may require.

District had created the allegedly dangerous condition. (See § 835, subd. (a).) In opposition, Brown argued that the doctrine of res ipsa loquitur applied and that, because the doctrine permits the trier of fact to presume negligence, summary judgment was inappropriate. The trial court rejected Brown's argument, granted the motion for summary judgment, and entered judgment for the District.

The Court of Appeal reversed. The court held both that the doctrine of res ipsa loquitur applied under the facts of the case and that the resulting presumption of negligence established a prima facie case under section 835, subdivision (a). We granted review to consider these issues.

## DISCUSSION

### A. *Application of the Res Ipsa Loquitur Doctrine.*

The first question before us is whether the Court of Appeal correctly applied the doctrine of res ipsa loquitur to the undisputed evidence. The question has this significance: Brown, in order to recover damages from the District, must prove that "[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition." (§ 835, subd. (a).) Because there is no evidence that the lunch meat came to be on the floor through an employee's negligence, the District is entitled to summary judgment unless the doctrine of res ipsa loquitur would permit a jury to infer that fact.

The doctrine of res ipsa loquitur is too familiar to warrant a lengthy explanation. In brief, certain kinds of accidents are so likely to have been caused by the defendant's negligence that one may fairly say "the thing speaks for itself." The Latin equivalent of this phrase, "res ipsa loquitur," was first applied to a barrel of flour that rolled out of the window of the defendant's warehouse onto the plaintiff. (*Byrne* v. *Boadle* (1863) 159 Eng.Rep. 299, 300.) As later courts repeated the phrase, it evolved into the name of a rule for determining whether circumstantial evidence of negligence is sufficient. The procedural and evidentiary consequences that follow from the conclusion that an accident "speaks for itself" vary from jurisdiction to jurisdiction.

In California, the doctrine of res ipsa loquitur is defined by statute as "a presumption affecting the burden of producing evidence." (Evid. Code, § 646, subd. (b).) The presumption arises when the evidence satisfies three conditions: " '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an

agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' " (*Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258], quoting Prosser, Torts, p. 295.) A presumption affecting the burden of producing evidence "require[s] the trier of fact to assume the existence of the presumed fact" unless the defendant introduces evidence to the contrary. (Evid. Code, § 604; see also *id.*, § 646, subd. (c).) The presumed fact, in this context, is that "a proximate cause of the occurrence was some negligent conduct on the part of the defendant . . . ." (*Id.*, § 646, subd. (c)(1).) If the defendant introduces "evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence," the trier of fact determines whether defendant was negligent without regard to the presumption, simply by weighing the evidence. (*Id.*, § 646, subd. (c); see also *id.*, § 604.)

Experience teaches that slips and falls are not so likely to be the result of negligence as to justify a presumption to that effect. As Prosser and Keeton explain, "there are many accidents which, as a matter of common knowledge, occur frequently enough without anyone's fault. . . . [A]n ordinary slip and fall . . . will not in [itself] justify the conclusion that negligence is the most likely explanation; and to such events res ipsa loquitur does not apply." (Prosser & Keeton, Torts (5th ed. 1984) § 39, p. 246.) This is true even when the fall is associated with a slippery object, because objects all too often appear on floors without sufficient explanation. For this reason, "something slippery on the floor affords no res ipsa case against the owner of the premises, unless it is shown to have been there long enough so that he should have discovered and removed it." (*Id.*, at pp. 255-256.)

■■ This common wisdom is reflected in a legion of cases from many jurisdictions declaring as a general rule that res ipsa loquitur does not apply to slip and fall cases.[2] The analysis in *Oldenburg* v. *Sears, Roebuck & Co., supra,* 152 Cal.App.2d 733, in which the plaintiff slipped on a piece of

---

[2]Cases from this state include, for example, *Oldenburg* v. *Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 741 [314 P.2d 33]; *Vaughn* v. *Montgomery Ward & Co.* (1950) 95 Cal.App.2d 553, 556 [213 P.2d 417]; *Gold* v. *Arizona Realty etc. Co.* (1936) 12 Cal.App.2d 676, 677 [55 P.2d 1254]; *Finch* v. *Willmott* (1930) 107 Cal.App. 662, 666 [290 P. 660]; and *Marple* v. *Manspeaker* (1928) 88 Cal.App. 682, 685 [263 P. 1022]. Cf. *Dennis* v. *Carolina Pines Bowling Center* (1967) 248 Cal.App.2d 369, 372 [56 Cal.Rptr. 453]; *Owen* v. *Beauchamp* (1944) 66 Cal.App.2d 750, 754 [152 P.2d 756].

For similar cases from other jurisdictions see, for example, *Ex parte Travis* (Ala. 1982) 414 So.2d 956, 958; *Foster* v. *Kwik Chek Super Markets, Inc.* (1969) 284 Ala. 348 [224 So.2d 895, 897]; *Great Atlantic & Pacific Tea Co.* v. *Bennett* (1958) 267 Ala. 538 [103 So.2d 177, 178]; *Rhodes* v. *El Rancho Markets* (1969) 9 Ariz.App. 576 [454 P.2d 1016, 1020]; *Safeway Stores, Inc.* v. *Willmon* (1986) 289 Ark. 14 [708 S.W.2d 623, 624]; *Ogden Estate* v. *Decatur County Hosp.* (Ind.App. 1987) 509 N.E.2d 901, 904; *Douglas* v. *Great Atlantic & Pac. Tea Co.*

chalk, is typical: "The burden is on the plaintiff to prove every essential fact on which she relies [citation]. This burden is not met merely by proof that plaintiff invitee stepped on something while on invitor's premises and thereby was caused to fall and receive injuries, for '[n]o inference of negligence arises based simply upon proof of a fall upon the owner's floor. The doctrine of res ipsa loquitur is not applicable to such cases.' [Citations]" (*Id.*, at p. 741.)

While we need not go so far as to say that res ipsa loquitur can never apply to a slip and fall, the evidence in this case fittingly illustrates why such an occurrence ordinarily does not "speak for itself." The lunch meat that apparently caused the accident went undetected until Brown fell; afterward, it was found stuck to the sole of his shoe. To be sure, the lunch meat might have been dropped by an employee, but it might also have been dropped by a visitor, tracked in from the outside or from Brown's own van, transported by an animal, or fallen from an object carried down the hall, even from one of the computers that Brown was delivering. Some of these explanations do not presuppose negligence, and none is inherently more probable than the others. In short, there is no basis whatever for a finding that either of the doctrine's first two conditions existed, i.e., (1) that the accident was of a kind which ordinarily does not occur in the absence of someone's negligence, or (2) that it was caused by an agency or instrumentality within the defendant's exclusive control.

From this perspective, the case is practically identical with *Gold* v. *Arizona Realty etc. Co.*, *supra*, 12 Cal.App.2d 676, in which the plaintiff slipped on a foreign substance in the defendant's apartment building. The court held that res ipsa loquitur did not apply because "[t]he mere fact that plaintiff tripped and fell downstairs does not of itself create a situation in which the doctrine can be invoked. [Citation.] It was not shown that the 'substance' which caused plaintiff's fall had been on the stairway any length of time or that it had been left there by an agent of defendant. [Citation.] To determine how the 'substance' became attached to plaintiff's shoe one must enter the field of conjecture. It may have been picked up from the street as

(Miss. 1981) 405 So.2d 107, 111; *Daniels* v. *Morgan & Lindsay, Inc.* (Miss. 1967) 198 So.2d 579, 584; *F.W. Woolworth Co.* v. *Stokes* (Miss. 1966) 191 So.2d 411, 415; *Sears, Roebuck & Company* v. *Tisdale* (Miss. 1966) 185 So.2d 916, 917; *Hallett* v. *Furr's, Inc.* (1963) 71 N.M. 377 [378 P.2d 613, 617]; *Mahoney* v. *J.C. Penney Co.* (1962) 71 N.M. 244 [377 P.2d 663, 669]; *Kitts* v. *Shop Rite Foods, Inc.* (1958) 64 N.M. 24 [323 P.2d 282, 284]; *Haynes* v. *Horton* (1964) 261 N.C. 615 [135 S.E.2d 582, 583]; *Prame* v. *Ames Department Stores, Inc.* (1991) 176 A.D.2d 1215 [577 N.Y.S.2d 188]; *Murrell* v. *Handley* (1957) 245 N.C. 559 [96 S.E.2d 717, 720]; *Barnes* v. *Hotel O. Henry Corp.* (1949) 229 N.C. 730 [51 S.E.2d 180, 181]; *Tweed* v. *First Nat. Bldg. Corp.* (1950) 203 Okla. 31 [218 P.2d 356, 358]; *German* v. *Kienow's Food Stores* (1967) 246 Ore. 334 [425 P.2d 523, 525]; *Franklin* v. *Safeway Stores, Inc.* (Tex.Civ.App. 1973) 504 S.W.2d 514, 517.

she entered the apartment house or it may have dropped on the stairway by someone not in defendant's employ." (*Id.*, at p. 677.)

In the case before us, one would also have to enter the field of conjecture to determine how lunch meat came to be underneath Brown's foot. That is what the Court of Appeal appears to have done. To support its conclusion that Brown's accident was of a type that would not ordinarily occur in the absence of negligence, the court reasoned that "[s]omeone must have dropped the lunch meat on the hallway floor." Perhaps so, perhaps not. The evidence is silent. But even if one conjectures that it was dropped, one must pile conjecture upon conjecture to decide that an employee was responsible. The Court of Appeal also asserted that "[c]ommon experience indicates Brown probably would not have slipped on lunch meat in the hallway in the absence of someone's negligence." However, this assertion both contradicts the nearly universal experience reflected in judicial opinions (see the cases cited in fn. 2, *ante*) and overlooks equally probable explanations of the accident.

Conjecture also appears to underlie the Court of Appeal's conclusion that the lunch meat was under the District's exclusive control. Even granting the premise that the concept of exclusive control is somewhat flexible, and that "the plaintiff need not exclude all other persons who might possibly have been responsible" (*Zentz* v. *Coca Cola Bottling Co.* (1952) 39 Cal.2d 436, 443-444 [247 P.2d 344]), the evidence in this case still does not support the necessary conclusion that "it is *more probable than not* that the injury was the result of the *defendant's* negligence." (*Id.*, at p. 443, first italics added.)

Accordingly, the Court of Appeal erred in holding that the evidence was sufficient to raise a presumption of negligence under the doctrine of res ipsa loquitur. Because there is no evidence to show that an employee of the District created the allegedly dangerous condition (§ 835, subd. (a)), the superior court's order granting the District's motion for summary judgment was correct.[3]

B. *Interpretation of Section 835.*

As we have discussed, the Court of Appeal erred in holding that the facts of this case satisfied the requirements of the res ipsa loquitur doctrine. This was not, however, the only error in the decision below. ▮▮▮ It was also

---

[3]For the first time in this court, Brown argues that there is sufficient evidence to support a finding of negligence even without the benefit of res ipsa loquitur. We do not ordinarily consider issues that were not raised below (Cal. Rules of Court, rule 29(b)(1); see *Marshall* v. *Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1059 [10 Cal.Rptr.2d 72, 832 P.2d 573]) and see no compelling reason to depart from the ordinary rule in this case.

incorrect to hold that plaintiff Brown could use res ipsa loquitur to establish a prima facie case against the District under section 835. This additional error independently requires the judgment to be reversed.

Brown's suit against the District is not an ordinary negligence case; it is an action under section 835. This is because a public entity is not liable for injuries except as provided by statute (§ 815) and because section 835 sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property. ■ "[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].)

Section 835 declares that, "[e]xcept as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Because there was no evidence that the District had notice of the allegedly dangerous condition, the superior court correctly ruled that the District could not be liable under section 835, subdivision (b). Brown does not challenge this ruling. Instead, he argues that an employee of the district "created the dangerous condition" within the meaning of subdivision (a). Based on the assumption that the doctrine of res ipsa loquitur applies, Brown argues that the resulting presumption of negligence satisfies the requirements of liability under subdivision (a).

In opposition, the District argues that the res ipsa loquitur presumption does not satisfy the conditions for holding a public entity liable under subdivision (a). According to the District, the Legislature did not intend to subject public entities to liability for all types of employee negligence. Instead, the Legislature limited the liability of public entities to cases in which a public employee "created" the dangerous condition. (§ 835, subd. (a).) According to the District, the Legislature did not require that a public

entity have notice of a dangerous condition "created" by a public employee only because, in such cases, it is fair to presume that the entity has notice. Thus, the statutory term "created" must be understood to require the type of involvement by a public employee that would justify a presumption of notice. Because res ipsa loquitur can apply even without such involvement by a public employee, the doctrine does not, according to the District, satisfy the conditions of liability under subdivision (a).

Brown reads another provision of the Tort Claims Act, namely section 830.5, as an express legislative declaration that the doctrine of res ipsa loquitur can be used to establish a public entity's liability. Section 830.5 provides that, "[e]xcept where the doctrine of res ipsa loquitur is applicable, the happening of the accident which results in the injury is not in and of itself evidence that public property was in a dangerous condition." (§ 830.5, subd. (a).) The District, however, reads the statute more narrowly to mean that res ipsa loquitur can be used to show that "public property was in a dangerous condition" (*ibid.*; cf. § 830, subd. (a) [definition of "dangerous condition"]) but not to satisfy the other elements of liability.

Because the statute is ambiguous, we consult the legislative history. (*Kennedy Wholesale, Inc.* v. *State Bd. of Equalization* (1991) 53 Cal.3d 245, 250 [279 Cal.Rptr. 325, 806 P.2d 1360].) The history begins in 1961, when this court held that the doctrine of sovereign immunity would no longer protect public entities from civil liability for their torts. (*Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457].) The Legislature responded by suspending the decision's effect (Stats. 1961, ch. 1404, pp. 3209-3210) and by directing the California Law Revision Commission (hereafter Commission) to conduct a study of whether the doctrine of sovereign immunity should be abolished or revised. Following extensive research, the Commission published a recommendation (Recommendation Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employees, 4 Cal. Law Revision Com. Rep. (Jan. 1963) p. 801), which became the Tort Claims Act (Stats. 1963, ch. 1681, p. 3266).

Section 830.5, the only provision of the Tort Claims Act that mentions res ipsa loquitur, was added to the proposed act by the Senate. (1 Sen. J. (1963 Reg. Sess.) p. 518 [Sen. Bill No. 42, Amend. No. 19].) The Senate explained the amendment's purpose with this comment: "Subdivision (a) of [section 830.5] makes applicable to public entities the same rule that applies in actions against private persons. It overrules cases that indicate that the happening of the accident is evidence that public property was in a dangerous condition. However, the section does not prevent the use of the doctrine

of res ipsa loquitur in appropriate cases." (Sen. com. comment to § 830.5, reprinted at 32 West's Ann. Gov. Code (1980) at p. 281.)

Thus, the Senate amendment dealing with res ipsa loquitur was expressly intended to abrogate a rule to the effect that "the happening of the accident is evidence that public property was in a dangerous condition." (Sen. committee com. to § 830.5, reprinted in 32 West's Ann. Gov. Code, *supra*, at p. 281.) The rule had occasionally led to the imposition of liability on public entities for relatively trivial defects in, and unforeseeable uses of, public property. (See, e.g., *Johnson* v. *Palo Alto* (1962) 199 Cal.App.2d 148, 150-151 [18 Cal.Rptr. 484] [a difference in height of one-half inch between sidewalk edges caused plaintiff to fall]; *Gentekos* v. *City & County of S. F.* (1958) 163 Cal.App.2d 691, 695, 697 [329 P.2d 943] [similar facts]; *Balkwill* v. *Stockton* (1942) 50 Cal.App.2d 661, 664, 668 [123 P.2d 596] [holes in sidewalk]; *Hook* v. *Sacramento* (1931) 118 Cal.App. 547, 551-552 [5 P.2d 643] [similar facts]; *Bauman* v. *San Francisco* (1940) 42 Cal.App.2d 144, 149, 154 [108 P.2d 989] [plaintiff injured by baseball in playground intended for small children]; see also Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) appen., p. 633 [further references to Van Alstyne are to this work].) The Commission had already proposed to eliminate liability for trivial defects and unforeseeable uses by excluding them from the definition of "dangerous condition."[4] This proposal, which the Legislature also adopted, eventually became section 830, subdivision (a). The Senate amendment concerning res ipsa loquitur (§ 830.5) merely reinforced the point.

Section 830.5 thus eliminates any inference of dangerousness that arises from the mere "happening of the accident." (§ 830.5, subd. (a).) On the other hand, the Legislature may have intended to permit an inference of dangerousness "where the doctrine of res ipsa loquitur is applicable . . . ." (*Ibid.*; see also Sen. committee com. to § 830.5, reprinted in 32 West's Ann. Gov. Code, *supra*, at p. 281.) It might be possible to reconcile this limited use of res ipsa loquitur with the Legislature's intent to narrow liability: Use of the doctrine to infer dangerousness would not ordinarily create liability for trivial defects or unforeseeable uses because res ipsa loquitur applies only when the accident was "of a kind which ordinarily does not occur in the absence of someone's negligence . . . ." (*Ybarra* v. *Spangard, supra*, 25 Cal.2d at p. 489, internal quotations omitted.)

---

[4] "'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

The lower courts did not decide whether lunch meat on the floor can amount to a "dangerous condition" under section 830. Nor do we.

Professor Van Alstyne[5] offers a similar interpretation of section 830.5: "The requirement that the condition must have created a reasonably foreseeable risk of the kind of injury that did occur (see [§ 835] . . .) seems to be within the logic of the res ipsa rationale, . . . and the doctrine probably would supply this element in most situations. It appears to be consistent with the basis for res ipsa loquitur—that the injury is of a kind that would not have occurred except through the negligent construction or maintenance of the instrumentality by the party having exclusive control of it." (Van Alstyne, *supra*, § 3.80, p. 307.)

Thus, it appears that the doctrine of res ipsa loquitur can be used to establish some of the statutory conditions for liability. Although we need not address the issue in this case (see fn. 4, *ante*), perhaps the doctrine might be used "in appropriate cases" to show that the public entity's property was in a dangerous condition. (See Sen. committee com. to § 830.5, reprinted in 32 West's Ann. Gov. Code, *supra*, at p. 281; cf. § 830, subd. (a).) Moreover, it is consistent with the logic of res ipsa loquitur to permit its use to show that a particular act or omission was negligent. However, to return to Professor Van Alstyne's analysis, "[i]t is doubtful . . . [whether the res ipsa loquitur] doctrine would also support an inference, without additional evidence, *that the public entity* either *created the condition* or had notice of it in sufficient time to protect against the injury. [§ 835.] . . . These liability requirements appear to be beyond the legislative intent regarding applicability of the res ipsa doctrine . . . ." (Van Alstyne, *supra*, § 3.80, pp. 307-308, italics added.)

The parties dispute whether Professor Van Alstyne's conclusion accurately reflects legislative intent. However, whether or not one accepts the professor's conclusion one may at least accept his premise without much controversy: The res ipsa loquitur presumption can be used to establish those conditions of liability that the presumption logically tends to establish.

The res ipsa loquitur presumption, under California law, is that "a proximate cause of the occurrence was some negligent conduct on the part of the defendant . . . ." (Evid. Code, § 646, subd. (c)(1).) Thus, if the Legislature had intended to hold a public entity liable for all types of negligent conduct by public employees, we would have little hesitation in holding that res ipsa loquitur satisfied the statutory conditions of liability. However, it appears that the Legislature intended to impose liability on public entities only in a

[5]Professor Van Alstyne was the Commission's research consultant on the subject of sovereign immunity. The study he prepared for the Commission is published as A Study Relating to Sovereign Immunity (Jan. 1963) 5 California Law Revision Commission Report page 1.

narrow set of cases. This narrowing of liability is accomplished by the requirement that an employee of the public entity have "created" the dangerous condition. (§ 835, subd. (a).)

The intent of section 835 is set out in the legislative committee comment, which repeats the relevant comments of the Commission. The comment explains that section 835 "is similar to the Public Liability Act of 1923, under which cities, counties and school districts [were] liable for injuries proximately caused by the dangerous conditions of their property. [¶] *Although there is no provision similar to subdivision (a) in [the former act], the courts have held that entities are liable under that act for dangerous conditions created by the negligence or wrongful acts of their employees.* Pritchard v. Sully-Miller Contracting Co. [(1960)] 178 Cal.App.2d 246 . . . ." (Sen. committee com. to § 835, reprinted at 32 West's Ann. Gov. Code, *supra,* p. 301, italics added; see also Recommendation Relating to Sovereign Immunity, *supra,* 4 Cal. Law Revision Com. Rep. at p. 854 [verbatim].)

The judicial decisions to which the comment refers addressed what was, at the time, perceived to be an unfair loophole in the Public Liability Act of 1923. (Former § 53051, added by Stats. 1949, ch. 81, § 1, p. 285; repealed by Stats. 1963, ch. 1681, § 18, p. 3286.) Under the former act, a public entity was liable for injuries caused by a dangerous condition of its property only when the "legislative body, board, or person authorized to remedy the condition" had "knowledge or notice" and, "[f]or a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition . . . ." (Former § 53051, Stats. 1949, ch. 81, § 1, p. 285.) Over time, a rule evolved to the effect that the statutory notice requirements did not apply to dangerous conditions that had been deliberately created by public employees because, in such circumstances, knowledge was presumed.

The opinion cited in the comment (*Pritchard v. Sully-Miller Contracting Co.* (1960) 178 Cal.App.2d 246 [2 Cal.Rptr. 830] (*Pritchard*)) recognizes this exception to the former statute's notice requirement. The plaintiff in *Pritchard,* who had been injured in an automobile accident, alleged that the accident was caused by the manner in which a city employee had timed traffic signals. The trial court instructed the jury that the plaintiff did not need to show, as the former statute seemed to require, that the "legislative body, board, or person authorized to remedy the condition" had received notice. (Former § 53051, Stats. 1949, ch. 81, § 1, p. 285; see *Pritchard, supra,* 178 Cal.App.2d at pp. 256-257.) The jury found for the plaintiff, and the Court of Appeal upheld the verdict, reasoning that "the fact that the city itself deliberately created the dangerous condition dispensed with the necessity of the notice contemplated by section 53051 . . . ." (*Pritchard, supra,* 178 Cal.App.2d at p. 254.)

*Pritchard* accurately followed *Fackrell* v. *City of San Diego* (1945) 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 773] (*Fackrell*), in which we held that a city was presumed to know of the dangerous condition presented by a poorly designed sidewalk improvement. We explained that where an improvement "has been planned by city officers and constructed in accordance with such plan, and [where] by carrying out the plan a dangerous and defective condition has been created, no further proof is needed to charge the city with notice of that condition." (*Id.*, at p. 203.)

In short, *Fackrell* and *Pritchard* applied the "well established" rule that a public agency was presumed to have notice of a dangerous condition of property that was the "natural and probable consequence" of the entity's own work. (*Fackrell, supra*, 26 Cal.2d at pp. 203, 206; cf. *Pritchard, supra*, 178 Cal.App.2d at p. 254.)[6] The language of the Tort Claims Act, which the Legislature explained by reference to *Pritchard*, was expressly intended to codify this rule. This is clear from the legislative committee comment: "Although there is no provision similar to [section 835,] subdivision (a) in the Public Liability Act of 1923, the courts have held that entities are liable under that act for dangerous conditions created by the negligent or wrongful acts of their employees. Pritchard v. Sully-Miller Contracting Co., [*supra*] . . . ." (Sen. committee com. to § 835, *supra*, reprinted at 32 West's Ann. Gov. Code, § 835, p. 301.)

The Legislature's reference to *Pritchard, supra*, 178 Cal.App.2d 246, can only mean that it intended to adopt the rule of that case, i.e., that a public entity is liable for a dangerous condition created by an employee under circumstances in which the employee's involvement makes it fair to presume that the entity had notice of the condition. Indeed, the Commission in its recommendation had already explained the same concept in different words: "The dangerous conditions statute should provide specifically that a governmental entity is liable for dangerous conditions of property created by the negligent or wrongful act of an employee acting within the scope of his employment even if no showing is made that the entity had any *other* notice of the existence of the condition or an opportunity to make repairs or take precautions against injury. The courts have construed the existing Public Liability Act as making public entities liable for negligently created defects." (Recommendation Relating to Sovereign Immunity, *supra*, 4 Cal. Law Revision Com. Rep. at p. 824, italics added.)

---

[6]See also *Watson* v. *City of Alameda* (1933) 219 Cal. 331, 334 [26 P.2d 286] (city employees marked a crosswalk with slippery paint); *Bigelow* v. *City of Ontario* (1940) 37 Cal.App.2d 198, 204 [99 P.2d 298] (city employees created a dangerous roadway); *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.* (1938) 28 Cal.App.2d 215, 219 [82 P.2d 216] (city employees painted a misleading center line on a road); *Wise* v. *City of Los Angeles* (1935) 9 Cal.App.2d 364, 367 [49 P.2d 1122] (city employee dug and left a hole in street).

Professor Van Alstyne's analysis reinforces this interpretation of section 835, subdivision (a): "The creation by the public entity of a physical facility or condition that is 'dangerous' dispenses with the necessity of notice, *for the entity presumably knows already that it has affirmatively created the condition*, and thus has notice that it is dangerous." (Van Alstyne, *supra*, § 3.17b, p. 208, italics added.)

While there is, thus, ample evidence that section 835, subdivision (a), was intended to incorporate the *Pritchard* rule, there is no evidence whatever that the Legislature intended to extend the liability of public entities to cases in which there was no involvement by a public employee and, thus, no basis for presuming that the entity had notice of the dangerous condition.

The Court of Appeal, which reached a different conclusion, reasoned that "the notice requirements of [section 835, subdivision] (b) have no application" to cases of employee negligence under subdivision (a). It is true that the notice requirements of subdivision (b) do not apply to cases brought under subdivision (a). However, it does not follow that the Legislature intended to impose liability on a public entity for a dangerous condition absent a showing that a public employee was involved in its creation.

Again, the legislative history is instructive. The former Public Liability Act imposed liability for a dangerous condition of public property only when the governing board or person "authorized to remedy the condition" had "knowledge or notice." (Former § 53051, Stats. 1949, ch. 81, § 1, p. 285; see Recommendation Relating to Sovereign Immunity, *supra*, 4 Cal. Law Revision Com. Rep. at p. 825.) The Commission recommended that this requirement be abolished. However, the reason for abolishing the requirement was not to hold public entities liable for unknown dangers but to apply the rules that govern the imputation of knowledge from employees to employers in ordinary civil cases.

This is evident from the Commission's explanation of the proposed section 835: "The requirement that the dangerous condition of public property be known to the governing board or a person authorized to remedy the defect should be repealed. The ordinary rules for imputing the knowledge of an employee to an employer should be applicable to public entities just as they are applicable to private owners and occupiers of land. Under these rules, the knowledge of an employee concerning a dangerous condition is imputed to the employer if under all the circumstances it would have been unreasonable for the employee not to have informed his employer. The knowledge of employees will not be imputed to the entity in other circumstances." (Recommendation Relating to Sovereign Immunity, *supra*, 4 Cal. Law Revision Com. Rep. at p. 825.)

Subdivisions (a) and (b) of section 835 obviously address two different types of cases. However, what distinguishes the two types of cases is not simply whether the public entity has notice of the dangerous condition. Instead, what distinguishes the two cases in practice is who created the dangerous condition. Because an entity must act through its employees, virtually all suits brought on account of dangerous conditions created by the entity will be brought under subdivision (a). In contrast, subdivision (b) can also support suits based on dangerous conditions not created by the entity or its employees.

A public entity can be liable for a dangerous condition not of its own making if the entity had "actual or constructive notice . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835, subd. (b).) To be sure, there is no corresponding requirement that the public entity have "notice" of dangerous conditions created by the entity itself or its employees. However, there is no such requirement only because "[t]he creation by the public entity of a physical facility or condition that is 'dangerous' dispenses with the necessity of notice, *for the entity presumably knows already that it has affirmatively created the condition*, and thus has notice that it is dangerous." (Van Alstyne, *supra*, § 3.17b, p. 208, italics added; cf. Sen. committee com. to § 835, *supra*, reprinted at 32 West's Ann. Gov. Code, § 835, at p. 301.)

With this background, it is apparent that the res ipsa loquitur presumption does not satisfy the requirements for holding a public entity liable under section 835, subdivision (a). Res ipsa loquitur requires the plaintiff to show only (1) that the accident was of a kind which ordinarily does not occur in the absence of negligence, (2) that the instrumentality of harm was within the defendant's exclusive control, and (3) that the plaintiff did not voluntarily contribute to his or her own injuries. (*Ybarra* v. *Spangard*, *supra*, 25 Cal.2d at p. 489.) Subdivision (a), in contrast, requires the plaintiff to show that an employee of the public entity "created" the dangerous condition; in view of the legislative history, which we have already discussed, the term "created" must be defined as the sort of involvement by an employee that would justify a presumption of notice on the entity's part.

It is, thus, evident that the elements of res ipsa loquitur do not match the elements of liability under the Government Code. To illustrate, the plaintiff in a case based on a dangerous condition of property can satisfy the elements of res ipsa loquitur without showing that the defendant or its employee created the condition. We have, for example, held that it was proper to instruct on res ipsa loquitur in a case where liability was based on an apartment owner's failure to discover that an exterior stairway had become

dangerous through natural deterioration. (*Di Mare* v. *Cresci* (1962) 58 Cal.2d 292 [23 Cal.Rptr. 772, 373 P.2d 860].) When a public entity is the defendant, however, the Legislature has expressly declared that such cases create liability only if the "public entity had actual or constructive notice of the dangerous condition under [s]ection 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835, subd. (b).) Moreover, under section 835.2 the public entity may defend by showing that a cost-effective inspection system would not have discovered the dangerous condition. (§ 835.2, subd. (b)(1).) These carefully crafted limits on the liability of public entities would be nullities if a plaintiff could establish a prima facie case of liability under section 835, subdivision (a), simply by proving the elements of res ipsa loquitur.

One searches the reported decisions in vain for an opinion applying section 835, subdivision (a), to facts like those of the case before us. Instead, one finds cases in which public employees actively created dangerous conditions under circumstances that would clearly justify a presumption of notice on the part of a public employer. To illustrate, in *Warden* v. *City of Los Angeles* (1975) 13 Cal.3d 297, 300 [118 Cal.Rptr. 487, 530 P.2d 175], municipal employees placed a sewer pipe just below the surface of a navigable watercourse without adequate warnings. In *Hilts* v. *County of Solano* (1968) 265 Cal.App.2d 161, 164-166, 172 [71 Cal.Rptr. 275], county employees constructed a dangerous highway intersection by grading the intersecting roadways at different elevations, by planting trees that obstructed vision, and by placing misleading signs and center lines. And in *Davis* v. *Cordova Recreation & Park Dist.* (1972) 24 Cal.App.3d 789, 792-793 [101 Cal.Rptr. 358], municipal employees dug a deep "fish hole" in the middle of a pond located on a children's playground.

In cases such as these, a public employee's involvement in creating the dangerous condition provides a basis for presuming that the public entity has notice of the condition.[7] This is because a public entity is presumed to have knowledge of a dangerous condition that is the "natural and probable consequence" of its work. (*Fackrell, supra,* 26 Cal.2d at p. 206.) Thus, the facts of such cases satisfy the assumption that underlies the Legislature's waiver of sovereign immunity for dangerous conditions created by public employees: "the entity presumably knows already that it has affirmatively created the condition, and thus has notice that it is dangerous." (Van Alstyne, *supra,* § 3.17b, p. 208.)

---

[7]This is not to say that liability under section 835, subdivision (a), can never be based on a negligent omission. For example, if an employee whose job it is to inspect or to repair a facility neglects that duty, such an employee may well be sufficiently involved in creating a dangerous condition to give rise to liability under section 835, subdivision (a).

In contrast, to hold that the res ipsa loquitur presumption, alone, established a prima facie case under section 835, subdivision (a), would permit a jury in this case to find the District liable even though there was no evidence that an employee of the District was involved in creating the allegedly dangerous condition. In such a case, the assumptions that underlie the Legislature's waiver of sovereign immunity for dangerous conditions created by public employees do not apply. Thus, to accept Brown's view of the statute would appear to extend liability further than the Legislature intended.

Accordingly, we conclude that the res ipsa loquitur presumption does not by itself establish a prima facie case of liability against a public entity under section 835, subdivision (a). The Court of Appeal's holding to the contrary was erroneous.

## DISPOSITION

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent.

I am concerned with the damage the majority are inflicting on the venerable doctrine of res ipsa loquitur. True, they inject a few qualifying words here and there, but the bottom line is that "the thing speaks for itself" may hereafter be heard as a mere whisper.

It must be kept in mind that the Court of Appeal did not decide the merits of the complaint, it held only that the issue was one of fact and could not be decided on summary judgment. In this the Court of Appeal was correct; its decision should not be reversed.

I cite, in particular, the following excerpts from the thoughtful Court of Appeal opinion of Justice Froehlich, concurred in by Justices Wiener and Huffman:[1]

"[T]he 'doctrine of res ipsa loquitur is applicable where the accident is of such a nature that it can be said, in the light of past experience, that it

---

[1]Brackets together, in this manner [], without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or

probably was the result of negligence by someone and that the defendant is probably the one responsible.' " (*Newing* v. *Cheatham* (1975) 15 Cal.3d 351, 359 [124 Cal.Rptr. 193, 540 P.2d 33], quoting *Di Mare* v. *Cresci* (1962) 58 Cal.2d 292, 298-299 [23 Cal.Rptr. 772, 373 P.2d 860].) Three conditions are necessary to apply the doctrine:

" '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' " (*Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].)

The evidence need not show that the accident must have happened because of someone's negligence, but that in the light of past experience the accident probably was caused by the negligence of someone. (*Di Mare* v. *Cresci, supra*, 58 Cal.2d at pp. 298-299.)

We turn to the first condition—whether the accident is one which would not ordinarily occur in the absence of someone's negligence. In deciding if this condition is satisfied, courts generally consider common knowledge and experience, the testimony of expert witnesses and the circumstances relevant to the particular accident in the case. (*Zentz* v. *Coca Cola Bottling Co* [*sic*] (1952) 39 Cal.2d 436, 446 [247 P.2d 344].)[2] Common experience indicates Brown probably would not have slipped on lunch meat in the hallway in the absence of someone's negligence. Someone must have dropped the lunch meat on the hallway floor.

The second condition, exclusivity of control, is a flexible concept. (*Zentz, supra*, 39 Cal.2d at pp. 443-444.) "[R]es ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible." (*Id.* at p. 446.)

---

additions. All footnotes in the Court Appeal opinion have been deleted with the exception of footnote 2.

[2]Courts have found this condition satisfied in a variety of factual situations. (See, e.g., *Zentz, supra*, 39 Cal.2d at p. 447 [exploding bottle of carbonated beverage]; *Raber* v. *Tumin* (1951) 36 Cal.2d 654, 659 [226 P.2d 574] [falling ladder]; *Baker* v. *B. F. Goodrich Co.* (1953) 115 Cal.App.2d 221, 223 [252 P.2d 24] [bursting automobile tire]; *Owens* v. *White Memorial Hospital* (1956) 138 Cal.App.2d 634, 639 [292 P.2d 288] [rail of hospital bed fell on plaintiff]; *McFarland* v. *Booker* (1967) 250 Cal.App.2d 402, 412 [58 Cal.Rptr. 417] [rear-end collision]; *Pappas* v. *Carson* (1975) 50 Cal.App.3d 261, 269 [123 Cal.Rptr. 343] [fire from overloading electrical circuits or from defective wiring].)

"Although . . . the doctrine will not ordinarily apply if it is equally probable that the negligence was that of someone other than the defendant, the plaintiff need not exclude all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident." (*Id.* at pp. 443-444.)

The third requirement of res ipsa loquitur is that the accident must not be due to action by the plaintiff. Although Brown obviously "participated" in the accident by stepping on the lunch meat, such conduct does not automatically constitute him a voluntary contributor to the negligence. This third requisite for res ipsa loquitur is not congruent with the concept of contributory negligence, but looks instead to find conduct so participatory in damage causation as to preclude the inference that the defendant's negligence caused the accident. (*McFarland* v. *Booker, supra*, 250 Cal.App.2d 402, 412.) "The plaintiff need not show that he was entirely inactive at the time of the accident in order to satisfy this requirement, so long as the evidence is such as to eliminate his conduct as a factor contributing to the occurrence." (*Newing* v. *Cheatham, supra*, 15 Cal.3d at p. 363.) He may rely on the res ipsa loquitur doctrine even if he participated in the events leading to the accident, as long as his action was not the primary cause. (*Hercules etc. Co.* v. *Automatic etc. Corp.* (1957) 151 Cal.App.2d 387, 396 [311 P.2d 907].) The requirement that the defendant be in exclusive control of the instrumentality which caused the injury means only that the plaintiff's use of the instrumentality must not have been the primary cause of the accident. (*Emerick* v. *Raleigh Hills Hospital* (1982) 133 Cal.App.3d 575, 585-586 [184 Cal.Rptr. 92]; 57B Am.Jur.2d, Negligence, § 1213, p. 127.) []

Where there is a question of fact as to any of the conditions required for application of the res ipsa loquitur doctrine, the issues are properly determined by a finder of fact. (*Newing* v. *Cheatham, supra*, 15 Cal.3d at p. 359; *Keena Scales* (1964) 61 Cal.2d 779, 783 [40 Cal.Rptr. 65, 394 P.2d 809]; *Hansen* v. *Matich Corporation* (1965) 234 Cal.App.2d 129, 133 [44 Cal.Rptr. 149].) Here, each of the three elements necessary to application of the doctrine was established at least to a degree sufficient to create a factual question for trial determination. Thus, the granting of summary judgment was improper. []

The district nevertheless presses its argument that the concept of res ipsa loquitur is somehow inappropriate in an action against a public entity. As the district contends, the logical steps of circumstantial evidence utilized by res ipsa loquitur to infer negligence do not seem appropriate for production of an inference of notice. (See Van Alstyne, [Cal. Government Tort Liability

Practice (Cont.Ed.Bar 1980) Dangerous Condition of Public Property] § 3.80, p. 308: ". . . the carefully prescribed statutory standards for determining when actual or constructive notice exists . . . do not appear to leave room for application of the doctrine [of res ipsa loquitur].") (See also *Van Dorn* v. *City & County of S. F.* (1951) 103 Cal.App.2d 714, 716 [230 P.2d 393], in which the court stated, without citation of authority, that "res ipsa does not apply" to proof of notice to the city of the defective condition.) There seems no reason, however, why res ipsa loquitur cannot be used to raise an inference of simple negligence as set forth in alternative subdivision (a) of Government Code section 835.

We note that Government Code section 830.5 states: "[T]he happening of the accident which results in the injury is not in and of itself evidence that public property was in a dangerous condition." However, this statutory statement of a legal truism is preceded by the caveat "Except where the doctrine of res ipsa loquitur is applicable." The Senate Legislative Committee's Comment to this legislation, which was adopted in 1963, states: ". . . the section does not prevent the use of the doctrine of res ipsa loquitur in appropriate cases." (See Sen. committee com., 32 West's Ann. Gov. Code (1980 ed.) § 830.5, p. 281.) []

To summarize: There is no reason why Brown could not rely upon the doctrine of res ipsa loquitur to establish a prima facie case of negligence on the part of the school district. Brown was required only to establish those traditional requisites for the doctrine—in terms of evidence from which a finder of fact *could* conclude the requisites established. We believe Brown did this. The meat was on the floor of the hallway, and appeared fresh when removed from the heel of Brown's boot. Access to the hallway was through a door usually locked by keys controlled by district employees. Vendors or visitors could enter only after an employee had unlocked the door. An employees' lounge and a picnic table were provided at the building. Brown stated he had seen people eating lunch in the area. He further stated *he* did not bring the meat into the hallway. An inference can be made it was unlikely that Brown, at the building for the purpose of delivering computers, or Balles, there to pick up saw blades, would have had any reason to carry lunch meat into the hallway. This was not an area frequented by students or people other than district employees. A jury could have found it more probable than not that a district employee was responsible. Here, the evidence presents a question of fact as to whether the conditions required for application of the doctrine of res ipsa loquitur are present. In that this is an

issue properly decided by a finder of fact, we should hold the court erred in granting summary judgment. (Cf. *Moreno* v. *Sayre* (1984) 162 Cal.App.3d 116, 125 [208 Cal.Rptr. 444].)