Filed 7/17/23  Price v. City of Pasadena CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JILL ROSENBERG PRICE, | B318250 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STCV07161) |
| v. | |
| CITY OF PASADENA, et. al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jill Feeney, Judge.  Affirmed.

Kirakosian Law and Gregory L. Kirakosian for Plaintiff and Appellant.

Michele Beal Bagneris, City Attorney, and Arnold F. Lee, Assistant City Attorney, for Defendants and Respondents.

_____

Plaintiff Jill Rosenberg Price appeals from the summary judgment entered in favor of defendants City of Pasadena and Rose Bowl Operating Company (collectively, Pasadena), which she sued for dangerous condition of public property. Plaintiff argues the trial court erred in concluding she could not prove Pasadena was responsible for moving the wooden log that she tripped over when walking on a Rose Bowl Stadium trail. We affirm because plaintiff cannot prove Pasadena employees or contractors moved the log, nor can she use the doctrine of res ipsa loquitur to imply Pasadena caused the dangerous condition.

### *FACTUAL AND PROCEDURAL BACKGROUND*

### 1. *Plaintiff's Accident*

On November 11, 2017, plaintiff and two friends drove to the Rose Bowl Stadium to attend a college football game. Around dusk, after parking in lot K of the stadium, plaintiff and her friends walked on an equestrian trail toward will call. Wooden logs separated lot K from the equestrian trail that abuts it. While walking on the trail, plaintiff's foot struck a wooden log, causing her to trip and fall forward. The 15-foot log was 12 to 16 inches in diameter and over 300 pounds. Pasadena used this wooden log and others like it as "car stops" to separate the parking lot from the equestrian trail. Unlike the other logs that separated the equestrian trail and lot K, this log angled into the trail at the time of plaintiff's fall.

Paramedics treated plaintiff where she fell. While at the scene, paramedics carried the wooden log out of the way to a different location.

## 2. *Plaintiff's Lawsuit and Pasadena's Motion for Summary Judgment*

On December 4, 2018, plaintiff sued Pasadena for her injuries. On March 25, 2019, plaintiff filed her first amended complaint, alleging dangerous condition of public property and negligence.[1] Plaintiff asserted Pasadena was responsible under Government Code section 835 for the dangerous condition (the askew log) that caused her injuries.[2]

On February 19, 2021, Pasadena moved for summary judgment. Among other arguments, Pasadena claimed it did not create, nor was it aware of, the dangerous condition.

Pasadena produced a declaration from the Rose Bowl Operating Company's Chief Operating Officer (COO), whom Pasadena designated as its person most knowledgeable, stating that the log was not in its proper place and Pasadena's employees and contractors did not place it in that position. The COO explained that the stadium grounds and parking lots undergo routine maintenance and repairs on a continual basis. He stated that prior to plaintiff's fall, there were no reports of any dangerous conditions in the area plaintiff fell. The COO attested Pasadena contractors and staff, who had an obligation to report and promptly address any dangerous conditions, had not discovered the askew log during the ordinary course of business or during daily inspections of the parking lots and surrounding areas. Because the football game was taking place

---

[1] On plaintiff's motion, the trial court dismissed the negligence cause of action against Pasadena.

[2] All further undesignated statutory references are to the Government Code.

that day, staff visually inspected the parking lots and surrounding areas on the day of plaintiff's fall, and did not discover the mis-angled log.

On October 27, 2021, plaintiff filed her opposition to the summary judgment motion. Citing testimony from the COO, plaintiff argued that, because Pasadena employees had previously moved the log with tractors and trucks to allow vehicles through an access gate from lot K to the adjacent golf course, Pasadena had the sole authority and ability to move the log.

In its reply brief, Pasadena argued plaintiffs failed to rebut Pasadena's evidence that Pasadena did not cause the log to be moved and was not on notice of the mispositioned log. At his deposition, the COO testified that the log was moved no more than four times per year, solely to open a gate. The COO stated there were no events requiring access to that gate and thus no need to move the log within the 11 days before plaintiff's fall. The COO stated that the log could have been moved by members of the public "horsing around" or doing something they should not have been doing. He also testified that although the log delineates where cars should stop, the log would not stop a speeding vehicle.

### 3. *Summary Judgment*

On November 10, 2021, the trial court granted summary judgment, ruling that plaintiff could not raise a triable issue of material fact that Pasadena created the dangerous condition, or that Pasadena had notice of the dangerous condition. The court explained:

> Plaintiff's argument seems to be that the only way
> the log could have been moved is by equipment only

4

Defendants could access.  Therefore, under this reasoning, it is likely no one but the Defendants could have moved the log and, since Defendants have moved the log in the past, it is likely they did so this time.  The evidence Plaintiff provides, however, does not lead to this conclusion without considerable speculation.

Indeed, Plaintiff must rely on speculation to make her theory work because she has not provided evidence that Defendants actually moved the log to its position where it protruded into the parking lot or that the log was only moveable by heavy machinery which must have been operated by Defendants. . . . .

Essentially, Plaintiff asks the court to apply the res ipsa loquitur doctrine to infer negligence.  However, that doctrine may not be applied where the cause of the accident is speculative and there are several possible causes for it.  [Citation.]  That is because for the doctrine to apply, a plaintiff must establish that the instrumentality or harm was in the exclusive control of the defendant.

Here, Plaintiff has not established who moved the log out of its usual place and into a position where it protruded into the parking lot.  The size of the log was not so large that it precludes the possibility that it could have been moved by a group of people or a vehicle or vehicles in the parking lot.  Moreover, the

log was out in the open and could have been accessed by members of the public.

On December 17, 2021, the court entered judgment in favor of Pasadena.

## *DISCUSSION*

Plaintiff's sole argument on appeal is that she raised a triable issue of material fact about whether Pasadena created the dangerous condition, i.e. caused the log to be mispositioned.

### 1. *Standard of Review*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant satisfies its "burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (*Id.*, § 437c, subd. (p)(2).)

The moving party must support the motion with evidence, e.g. affidavits, declarations, depositions, admissions, and matters subject to judicial notice, and the opposing party must oppose the motion with the like. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); Code Civ. Proc. § 437c, subd. (b).) When ruling on the motion, the court must consider all the evidence and all inferences reasonably drawn from it in

6

the light most favorable to the opposing party. (*Aguilar,* at p. 843; Code Civ. Proc. § 437c, subd. (c).)

"We review the trial court's grant of summary judgment de novo, applying the same statutory procedure followed in the trial court." (*Taylor v. Elliott Turbomachinery Co. Inc.* (2009) 171 Cal.App.4th 564, 574.)

## 2.     *Plaintiff Has Not Raised a Triable Issue of Fact that Pasadena Created the Dangerous Condition*

### A.     Background

To succeed on her dangerous condition claim under section 835, plaintiff had to prove:  (1) the public property was in a dangerous condition, (2) the dangerous condition proximately caused her injury, (3) the dangerous condition created a foreseeable risk of the kind of harm plaintiff suffered, and either: (4) an employee's negligent or wrongful act or omission within the scope of employment created the dangerous condition, or (5) the public entity had actual or constructive notice of the dangerous condition in sufficient time to remedy it.  (§ 835.) Plaintiff challenges the trial court's ruling on the fourth prong (Pasadena's creation of a dangerous condition).[3]

In its motion for summary judgment, Pasadena produced an affidavit from the COO of the Rose Bowl Operating Company, which stated the log was not in its proper place and Pasadena's employees and contractors did not place the log in that position. The COO also testified that neither staff nor contractors had reason to move the log within 11 days of the event plaintiff attended and did not observe the log askew during inspections.

---

[3]     Plaintiff does not appeal the trial court's alternative rationale that Pasadena lacked actual or constructive notice of the dangerous condition.

7

The record showed that the log could be moved if struck by a car or if picked up by multiple people, and in fact, the paramedics moved it on the night of plaintiff's fall. This evidence was sufficient to establish a prima facie case that no triable issue of fact existed that Pasadena created the dangerous condition.

The resolution of this appeal turns on whether plaintiff produced rebuttal evidence showing that Pasadena employees, while acting within the scope of their employment, mispositioned the log and thus created the dangerous condition. Plaintiff's only evidence was testimony from the COO stating the log was moved by Pasadena staff or contractors at most four times per year with a tractor or truck to open a gate.

**B.** **Plaintiff's evidence did not create a triable issue of fact as to Pasadena's creation of the dangerous condition**

For plaintiff to prevail on summary judgment, she must raise a triable issue of fact that Pasadena created the dangerous condition. The heading of her argument on this point is: "Evidence Was Introduced that Created a Reasonable Inference That Respondents' Employees Created the Dangerous Condition With an Instrumentality in Their 'Exclusive Control.' " We disagree.

Nothing in the record indicates Pasadena had exclusive control over the log. To the contrary, the public had easy and regular access to the log as it was located in a parking lot. Heavy machinery, although convenient for moving the large log, was not the only way to reposition it. Plaintiff testified the log was large enough that "a few people" were needed "to pick it up and move it," and admitted the paramedics moved the log at the scene of her accident. A vehicle hitting the log could also cause

8

it to shift.  Pasadena's evidence was that its employees did not shift the log askew, and neither direct nor circumstantial evidence, or reasonable inferences, suggests otherwise. Plaintiff's speculative argument to the contrary is not based on the factual record.

Plaintiff relies on *Getchell v. Rogers Jewelry* (2012) 203 Cal.App.4th 381 (*Getchell*) and *Zentz v. Coca Cola Bottling Co.* (1952) 39 Cal.2d 436 (*Zentz*) to support her argument that Pasadena had exclusive control.  In *Getchell*, the plaintiff slipped and fell on a cleaning solution in the breakroom of defendant's store.  (*Getchell,* at p. 383.)  The court found the defendant store had exclusive control because the only people with access to the breakroom and the cleaning solution were defendant's employees.  (*Ibid.*)  This case is inapt as plaintiff admits the public (not just Pasadena employees) had access to the log.

In *Zentz, supra,* 39 Cal.2d at page 439, a Coca Cola bottle exploded shortly after delivery to plaintiff's restaurant, injuring plaintiff.  The Supreme Court concluded res ipsa loquitur applied to that situation because the evidence indicated the bottle was otherwise properly handled and the defendant otherwise had exclusive control over the bottle and its contents. (*Id.* at pp. 447–448.)  *Zentz* likewise does not assist plaintiff as the public had access, opportunity, and means to move the log.

## C. Res Ipsa Loquitur Does Not Apply to Section 835 Actions

In her opening brief, plaintiff suggested that she could avail herself of the doctrine of res ipsa loquitur to establish a triable issue of fact as to creation of the dangerous condition.  In her reply brief, plaintiff clarifies that she makes no such

9

argument. The concession is appropriate and a brief discussion of Supreme Court authority on the subject explains why.

In *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829, the Supreme Court reversed the Court of Appeal's application of the res ipsa loquitur doctrine against a public entity in a dangerous condition case brought under section 835. The Supreme Court stated that "the elements of res ipsa loquitur do not match the elements of liability under the Government Code." (*Id.* at p. 836.) The court explained, "it is apparent that the res ipsa loquitur presumption does not satisfy the requirements for holding a public entity liable under section 835, subdivision (a). Res ipsa loquitur requires the plaintiff to show only (1) that the accident was of a kind which ordinarily does not occur in the absence of negligence, (2) that the instrumentality of harm was within the defendant's exclusive control, and (3) that the plaintiff did not voluntarily contribute to his or her own injuries. [Citation.] Subdivision (a) [of section 835], in contrast, requires the plaintiff to show that an employee of the public entity 'created' the dangerous condition; in view of the legislative history, . . . the term 'created' must be defined as the sort of involvement by an employee that would justify a presumption of notice on the entity's part." (*Ibid.*)

The Supreme Court concluded the Legislature did not intend "to impose liability on a public entity for a dangerous condition absent a showing that a public employee was involved in its creation." (*Brown, supra,* 4 Cal.4th at p. 835.) In holding res ispa loquitur did not apply to actions brought under section 835, the court stated: "to hold that the res ipsa loquitur presumption, alone, established a prima facie case under section 835, subdivision (a), would permit a jury in this case to find the

10

[public entity] liable even though there was no evidence that an employee of the [public entity] was involved in creating the allegedly dangerous condition." (*Id.* at p. 838.)

Stepping away from *Brown,* plaintiff argues in her reply brief that "[n]either *Brown* nor any case holds that a plaintiff is prevented from inferring through admissible evidence that a government entity created the dangerous condition." We agree but, as we have already concluded, the record supports no such inference and nothing in *Brown* compels a different result.

### DISPOSITION

The judgment is affirmed. Defendants City of Pasadena and Rose Bowl Operating Company are awarded costs on appeal.


RUBIN, P. J.

WE CONCUR:



MOOR, J.



KIM, J.

11