[No. E031896. Fourth Dist., Div. Two. July 8, 2003.]

TONJA ELCOME, Plaintiff and Appellant, v.
MICHAEL CHIN et al., Defendants and Respondents.

312

---

COUNSEL

Beverly Law Corporation, William James Beverly and Leslie K. Hart for Plaintiff and Appellant.

Fonda & Fraser, Peter M. Fonda and Christopher L. Smith for Defendant and Respondent Michael Chin.

Dummit, Faber, Briegleb & Diamond, Scott D. Buchholz and Janet M. Lingel for Defendant and Respondent Rancho Springs Medical Center.

---

OPINION

KING, J.—

## INTRODUCTION

Plaintiff sued two doctors and a hospital for medical malpractice. The trial court granted separate motions for summary judgment in favor of one of the doctors, Michael Chin, M.D., and the hospital, Tenet Healthsystem Heritage, Inc., doing business as Rancho Springs Medical Center (Tenet). The other defendant doctor, Tien Gu, M.D., is not a party to this appeal.

Plaintiff appeals from the judgments entered in favor of Dr. Chin and Tenet. She contends that the trial court did not properly apply the doctrine of res ipsa loquitur in ruling on the motions for summary judgment. We affirm.

We conclude that both motions were properly granted. Plaintiff failed to raise a triable issue of material fact that the defendants were negligent, or caused her injuries. In this opinion we address the quantum of evidence necessary for a plaintiff to raise triable issues of material fact, in opposing a motion for summary judgment in a medical malpractice action, where the plaintiff relies on the doctrine of res ipsa loquitur.

## FACTS AND PROCEDURAL HISTORY

### A. *Background*

On May 25, 2000, plaintiff was admitted to Rancho Springs Medical Center where she underwent "certain procedures including anterior and posterior repair." Dr. Gu performed the operation and Dr. Chin assisted. Tenet provided the operating room, surgical equipment, and surgical staff for the operation.

Plaintiff alleged in her complaint that Dr. Chin, Dr. Gu, and Tenet were negligent in the procedures performed, and caused her to sustain injuries and pain to her right elbow, right shoulder, right arm, and long thoracic nerve damage. Tenet and Dr. Chin filed separate motions for summary judgment. Plaintiff argues that the doctrine of res ipsa loquitur applies, because her upper extremity injuries could not have occurred but for the negligence of one of the defendants.

### B. *Evidence on Dr. Chin's Motion*

Dr. Chin submitted the declaration of Albert Yellin, M.D., in support of his motion. Dr. Yellin's declaration was the sole supporting evidence for each of eight purported undisputed facts.

Dr. Yellin stated that he was board certified in general surgery, and that he had reviewed plaintiff's medical records. Based on his review, he noted that plaintiff was a 39-year-old female at the time of the surgery, with chief complaints of frequent urination, nocturia, and bladder leakage with coughing, sneezing, and walking. She also complained of lower abdominal pain and urgency. She was unable to complete bowel movements and had anal incontinence at work or with any kind of activity. During the operation, plaintiff was placed in a lithotomy position. Allen stirrups were utilized in the high position and both upper extremities were secured to an arm board. Thereafter, Dr. Gu, the operating surgeon, performed an anterior and posterior repair, dermis sling, bladder neck suspension, cystoscopy, suprapubic catheter insertion, anal sphincteroplasty, and perineoplasty.

Dr. Yellin opined that upon review of the records, Dr. Chin, as the assistant surgeon, performed his responsibilities in an appropriate fashion. He opined that Dr. Chin's conduct complied with the standard of care for assistant surgeons and that Dr. Chin's conduct did not cause injury or damage to plaintiff.

In opposition, plaintiff submitted her own declaration. She did not proffer any expert witness declarations or any other evidence. She stated that during

the entire course of the surgery she was unconscious as a result of general anesthesia. She further stated that defendants had exclusive control and custody of her person and all instrumentalities used during and after the surgery. She awoke following the surgery with severe pain in her right elbow, right shoulder, and right arm. The pain became worse with time and spread to her neck, back, and hip. She further declared that "[p]rior to the surgery by Defendants, I had not previously suffered injury to, nor had I experienced any significant pain in my right shoulder or arm."

On this record, plaintiff argues that the doctrine of res ipsa loquitur applies, thereby preventing entry of summary judgment in favor of Dr. Chin.

### C. *Evidence on Tenet's Motion*

Tenet submitted the declaration of Evelyn Fraser, R.N., in support of its motion. Ms. Fraser indicated that she had reviewed plaintiff's complaint and relevant medical records. She opined that the treatment rendered to plaintiff by Tenet's nursing and nonphysician staff was within the applicable standard of care. She further stated that no act or omission of the nursing and nonphysician staff caused or contributed to any claimed injury to the plaintiff.

In opposition, plaintiff relied on her previously filed declaration in opposition to Dr. Chin's motion. She also submitted the declaration of Gregory Rosen, M.D., who is board certified in obstetrics, gynecology, and infertility and reproductive endocrinology. Dr. Rosen stated that he had reviewed the declarations of Ms. Fraser and Dr. Yellin. After setting forth his understanding as to the nature of the operation and his familiarity with it, Dr. Rosen opined as follows:

"5. I do not here opine whether, in fact, the plaintiff has actually sustained any injuries, when such injuries may have been sustained or what the source or cause of those injuries may be.

"6. The purpose of this declaration is to render a medical opinion that the nature and type of injuries which the plaintiff claims to have experienced and which she alleges that she began to suffer immediately following the surgery, are not the type of injuries or complications normally expected or ordinarily considered to be risks related to or associated with the surgery that was performed.

"7. In other words, surgery in the pelvic region including anterior and posterior repair as was performed in this case should have no impact upon the neck and shoulder area and should not involve potential injury or damage to the long thoracic nerve. [¶] ... [¶]

"9. The simple fact is that the plaintiff patient was unconscious by a general anesthetic and suffered an injury that is of a type that would not normally occur as a result of the surgery performed unless there were some negligent conduct, substandard handling or treatment or some other intervening action or agent during the surgery or immediately prior to or thereafter at a time when the patient was in the exclusive custody, care, and control of the doctors and hospital staff."

In reply, Tenet argued that plaintiff did not adequately address the elements of res ipsa loquitur and that plaintiff submitted no evidence that the injury was caused by an instrumentality within defendants' exclusive control. Tenet further argued that plaintiff did not establish that she suffered any injury or damage as a result of Tenet's negligence.

On this record, as in the record on Dr. Chin's motion, plaintiff argues that the doctrine of res ipsa loquitur should be applied, thereby preventing entry of summary judgment in favor of Tenet.

## DISCUSSION

A.  *Standard of Review*

"First, and generally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law …. There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof …. A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citations.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)

"Second, and generally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.… A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar, supra,* 25 Cal.4th at pp. 850–851.)

"Third, and generally, how the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production

depends on *which* would bear *what* burden of proof at trial.... [Thus], if a defendant moves for summary judgment against [a plaintiff who would bear the burden of proof by a preponderance of evidence at trial], he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, *he* would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact." (*Aguilar, supra,* 25 Cal.4th at p. 851.)

"In determining the propriety of a summary judgment, the trial court is limited to facts shown by the evidentiary materials submitted, as well as those admitted and uncontested in the pleadings. [Citations.] The court must consider all evidence set forth in the parties' papers, and summary judgment is to be granted if all the papers submitted show there is no triable issue of material fact in the action, thereby entitling the moving party to judgment as a matter of law. [Citation.]" (*Committee to Save the Beverly Highlands Homes Assn. v. Beverly Highlands Homes Assn.* (2001) 92 Cal.App.4th 1247, 1261 [112 Cal.Rptr.2d 732].) "[S]ummary judgment shall not be granted ... based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra,* 25 Cal.4th at p. 856.)

On appeal, "our review is de novo, and we independently review the record before the trial court." (*Riverside County Community Facilities Dist. v. Bainbridge 17* (1999) 77 Cal.App.4th 644, 652 [92 Cal.Rptr.2d 29].) "The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale." (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

## B. The Doctrine of Res Ipsa Loquitur

The doctrine of res ipsa loquitur creates a presumption affecting the burden of producing evidence. (Evid. Code, § 646, subd. (b).) "A presumption affecting the burden of producing evidence 'require[s] the trier of fact to assume the existence of the presumed fact' unless the defendant introduces evidence to the contrary. [Citations.]" (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 826 [15 Cal.Rptr.2d 679, 843 P.2d 624] (*Brown*).) Where the doctrine of res ipsa loquitur applies, "[t]he presumed fact ... is that 'a proximate cause of the [plaintiff's injury] was some negligent conduct on the part of the defendant ....' " (*Ibid.*)

At trial, before the burden-shifting presumption arises, *the plaintiff must present some substantial evidence* of three conditions: (1) the injury must be the kind which ordinarily does not occur in the absence of someone's

negligence; (2) the injury was caused by an instrumentality in the exclusive control of the defendant; and (3) the injury was not due to any voluntary action or contribution on the part of the plaintiff. (*Brown, supra,* 4 Cal.4th at pp. 825–826 [15 Cal.Rptr.2d 679, 843 P.2d 624]; Kerr v. Bock (1971) 5 Cal.3d 321, 324 [95 Cal.Rptr. 788, 486 P.2d 684].)

" 'As a general rule, res ipsa loquitur applies where the occurrence of the injury is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied both on common knowledge and on expert testimony.' " (*Kerr v. Bock, supra,* 5 Cal.3d at p. 324.)

C. *Medical Malpractice*

██ " '[I]n any medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." [Citation.]' " (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606 [90 Cal.Rptr.2d 396].)

" ' "The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman." [Citations.]' ... The 'common knowledge' exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' [Citations.] The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. [Citation.] Otherwise, ' "expert evidence is conclusive and cannot be disregarded. [Citations.]" ' " (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [35 Cal.Rptr.2d 685, 884 P.2d 142].)

D. *The Elements of Res Ipsa Loquitur Were Not Shown on Either Summary Judgment Motion*

Plaintiff contends that res ipsa loquitur, or a presumption of negligence causing injury, arose on both summary judgment motions. She argues that

defendants' expert witness declarations were insufficient to overcome the presumption of negligence. She notes that defendants' experts did not " 'explain the unusual result' as required by case law and, in fact … left in question the cause of the injury." Therefore, she argues, the burden never shifted to her to produce evidence of a triable issue of material fact. We do not agree with plaintiff's analysis.

■ Dr. Chin and Tenet met their initial burden of producing evidence that they did not breach the standard of care and did not cause plaintiff's injuries. The burden then shifted to plaintiff to raise a triable issue of material fact on the issues of negligence and causation. Plaintiff could have met this burden either by (1) producing direct evidence of each defendant's negligence and causation, or (2) producing evidence of the three elements of res ipsa loquitur.

Plaintiff did not attempt to produce direct evidence of negligence and causation. She also failed to produce evidence of the first and second elements of res ipsa loquitur, on either motion.

Plaintiff contends that it is within common knowledge that a person should not develop injury to their neck and upper extremities as a result of an operation focused in the pelvic area. Therefore, she argues, the evidence showed that at least one of the defendants must have been or probably was negligent and caused her injuries. We disagree.

This is not a case where a foreign object was left in plaintiff's body following an operation, for which there is *no explanation* other than that someone failed to exercise due care. There can be numerous etiologies for plaintiff's neck and upper extremity injuries which are totally unrelated to the surgery and which do not suggest the probability that one of the defendants or anyone else was negligent. Therefore, the "common knowledge" exception does not apply.

Plaintiff's lay declaration, wherein she stated she awoke after the surgery with pain in her upper extremities, was therefore insufficient to establish either the first or the second element of res ipsa loquitur, on both motions. Indeed, plaintiff's declaration does not negate the presence of neck and upper extremity problems before the surgery. Plaintiff merely declared, "[I] had not previously … experienced any significant pain in my right shoulder or arm."

Additionally, assuming that plaintiff's neck and upper extremity problems arose during the surgery, it does not suggest a *probability* that one or more of the defendants was negligent. Many problems could have arisen during the surgery which were not the result of someone's negligence.

On Tenet's motion, plaintiff submitted the declaration of Dr. Rosen. Dr. Rosen *did not* opine that plaintiff's injuries were of a kind that do not ordinarily occur in the absence of someone's negligence. Nor did he opine that plaintiff's injuries were caused by an agent or instrumentality in defendants' exclusive control.

Dr. Rosen said, "the nature and type of injuries which the plaintiff claims to have experienced and which she alleges that she began to suffer immediately following the surgery, are not the type of injuries or complications normally expected or ordinarily considered to be risks related to or associated with the surgery that was performed." This statement merely indicates that plaintiff's injuries were not a normal risk of the surgery that was performed. It does not suggest that plaintiff's injuries do not ordinarily occur in the absence of someone's negligence.

Dr. Rosen also said, "plaintiff ... suffered an injury ... that would not normally occur as a result of the surgery performed unless there were some negligent conduct, substandard handling or treatment *or some other intervening action or agent* during the surgery or immediately prior to or thereafter at a time when the [plaintiff] was in the exclusive custody, care, and control of the [defendants]." (Italics added.) This statement suggests the possibility that plaintiff's injuries were caused by one of the defendant's negligence, but it also acknowledges the possibility of alternative causes. Dr. Rosen did not say which of these possibilities was more probable than the others.

Indeed, Dr. Rosen specifically declined to offer an opinion on the issue of causation. He said, "[I] do not here opine whether, in fact, the plaintiff has actually sustained any injuries, *when such injuries may have been sustained or what the source or cause of those injuries may be.*" (Italics added.) Thus, Dr. Rosen indicated that not only did he not know the etiology of plaintiff's injuries, but that he cannot even opine that the problems were caused during the surgery. Accordingly, plaintiff failed to satisfy the first and second elements of res ipsa loquitur in opposing Tenet's motion.

The present case is similar to *Brown, supra,* 4 Cal.4th 820. There, the plaintiff slipped and fell on a piece of lunch meat on the defendant school district's property. (*Id.* at p. 823.) In opposing the district's motion for summary judgment, the plaintiff did not produce any evidence that an employee of the school district dropped the lunch meat on the floor, or that the school district had constructive notice of the allegedly dangerous condition. (Gov. Code., § 835, subds. (a)–(b).) Instead, the plaintiff argued that the doctrine of res ipsa loquitur applied, and that, because the doctrine permits the trier of fact to presume negligence, summary judgment was inappropriate. (*Brown, supra,* at pp. 824–825.)

The *Brown* court held that the doctrine did not apply, merely because plaintiff fell on a slippery object on the defendant's property. It reasoned that "the evidence in this case fittingly illustrates why such an occurrence ordinarily does not 'speak for itself.'... To be sure, the lunch meat might have been dropped by an employee, but it might also have been dropped by a visitor, tracked in from the outside or from Brown's own van, transported by an animal, or fallen from an object carried down the hall .... *Some of these explanations do not presuppose negligence, and none is inherently more probable than the others.* In short, there is no basis whatever for a finding that either of the doctrine's first two conditions existed, i.e., (1) that the accident was of a kind which ordinarily does not occur in the absence of someone's negligence, or (2) that it was caused by an agency or instrumentality within the defendant's exclusive control." (*Brown, supra,* 4 Cal.4th at p. 827, italics added.)

The *Brown* court further reasoned that, based on the evidence presented, it was *conjecture* to conclude that one of the defendant's employees was responsible for the lunch meat being on the floor, or that the lunch meat was under the defendant's exclusive control. "Even granting the premise that the concept of exclusive control is somewhat flexible, and that 'the plaintiff need not exclude all other persons who might possibly have been responsible' [citation], the evidence in this case still does not support the necessary conclusion that 'it is *more probable than not* that the injury was the result of the *defendant's* negligence.' [Citation.]" (*Brown, supra,* 4 Cal.4th at p. 828.) Thus, in *Brown*, the defendant was entitled to summary judgment. (*Ibid.*)

Here, too, plaintiff failed to present any evidence that her injuries were of a kind that do not ordinarily occur in the absence of defendants' negligence, or that her injuries were caused by an instrumentality within defendants' exclusive control. On this record, plaintiff's injuries may or may not have occurred during the surgery, and may or may not have been caused by the negligence of one or more of the defendants. None of the alternative explanations for plaintiff's injuries is inherently more probable than the others. Thus, the doctrine of res ipsa loquitur did not apply, and defendants were entitled to summary judgment.

Plaintiff relies on *Ybarra v. Spangard* (1944) 25 Cal.2d 486 [154 P.2d 687] (*Ybarra*) for the proposition that all that is necessary to meet the second prong of res ipsa loquitur is evidence that she did not have pain in her right elbow, shoulder, and arm before the operation, and awoke from the anesthetic with these symptoms. Thus, she argues, her injuries must have been caused during the operation. *Ybarra* does not support this argument.

In contrast to the present case, the plaintiff in *Ybarra* submitted medical evidence of injuries to his right arm, neck, and shoulder, which arose after

defendants performed an appendectomy. One doctor testified that the plaintiff's injuries were due to trauma or injury by pressure or strain. Another doctor testified that plaintiff's injury was a paralysis of traumatic origin, not arising from pathological causes, and not systemic. (*Ybarra, supra,* 25 Cal.2d at p. 488.)

The concept of res ipsa loquitur deals with circumstantial evidence and the presence of probabilities. The testimony of the two doctors in *Ybarra* on the issue of causation was vital to the doctrine's application. Although the doctors could not specifically identify the cause of the plaintiff's injuries, they were able to opine that plaintiff's paralysis was traumatically caused. This, in conjunction with the plaintiff's testimony that he didn't have the problems before the operation and that there was no voluntary action on his part which contributed to the injuries, was sufficient to establish that the plaintiff's injuries were probably caused by an agency or instrumentality within the defendants' exclusive control and thereby invoke the doctrine. Here, however, plaintiff produced no evidence of the cause of her injuries, the second element of res ipsa loquitur, on either motion.

We note that in *Blackwell v. Hurst* (1996) 46 Cal.App.4th 939 [54 Cal.Rptr.2d 209] (*Blackwell*), the court observed that "use of the res ipsa loquitur doctrine is especially suited to a medical or dental malpractice setting in which the unwitting and often unconscious or semiconscious patient is at an evidentiary disadvantage because of his or her inability to demonstrate what occurred in the hospital or surgical room setting." (*Id.* at p. 945.) This broad statement was particularly suited to the facts of *Blackwell*, which as we explain, are distinguishable from the facts of the present case.

In *Blackwell*, the plaintiff aspirated a crown that a dentist dropped into her mouth. (*Blackwell, supra,* 46 Cal.App.4th at p. 942.) The only element of res ipsa loquitur in dispute was the first, whether the aspiration of a crown ordinarily would not occur in the absence of someone's negligence. (*Id.* at p. 943.) At trial, the plaintiff produced expert evidence that the dentist should have taken some precaution to prevent a dropped object from being aspirated, such as a gauze bridge, a rubber dam, or positioning the patient in the dental chair differently. Thus, the evidence was sufficient to support an inference that aspiration of a crown does not ordinarily occur in the absence of someone's negligence. The court therefore held that the plaintiff was entitled to a res ipsa loquitur instruction at trial. (*Id.* at pp. 944–945.)

Here, however, plaintiff produced no evidence of the first or second elements of res ipsa loquitur in opposing either motion for summary judgment. Thus, the *Blackwell* court's statement that the doctrine of res ipsa loquitur is "especially suited" to medical and dental malpractice actions must

be understood within the context in which it was made. In *Blackwell*, the plaintiff produced sufficient evidence of the doctrine's three elements.

We further note that, in granting Tenet's motion, the trial court apparently determined that plaintiff was required to present expert testimony to establish that she was injured, and that her proffered expert declaration by Dr. Rosen did not do so. Plaintiff claims this was error. She argues that defendant did not, in its moving papers, claim or show that she was not injured, thus it cannot be a basis for granting the motion. We agree.

Tenet's separate statement of undisputed material facts does not state that plaintiff did not sustain injury or damage. Rather, it sets forth two purported undisputed facts: the first states that Tenet performed its responsibilities in an appropriate fashion and within the standard of care; the second states that Tenet did not cause injury or damage to plaintiff.

One of the purposes of the separate statement requirement is to inform the opposing party of what issues and undisputed material facts they must address in order to defeat the motion. (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 [282 Cal.Rptr. 368].) In this case, plaintiff was never notified that Tenet disputed the issue of whether she had an injury.

Moreover, plaintiff stated that she awoke from the surgery with pain in her right elbow, right shoulder, and right arm, and that the pain became worse with time and spread to her neck, back, and hip. Thus, a triable issue of "injury" was raised. Indeed, this issue was undisputed. Granting Tenet's motion on this ground was therefore error.

Nevertheless, and as we have explained, both defendants met their burden of producing evidence on the issues of negligence and causation. The burden then shifted to plaintiff to raise a triable issue of material fact on these issues. Plaintiff failed to meet this burden, on both motions.

## DISPOSITION

The judgments are affirmed. Dr. Chin and Tenet shall recover their costs on appeal.

Hollenhorst, Acting P. J., and McKinster, J., concurred.