Filed 4/20/26  Yahiaoui v. Pelayo CA4/3

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| YOUCEF YAHIAOUI, | |
| Plaintiff and Appellant, | G065272 |
| v. | (Super. Ct. No. 30-2023-01338895) |
| ARTURO PELAYO, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Kimberly A. Knill, Judge. Affirmed.

Law Offices of Michael Tsivyan and Michael Tsivyan for Plaintiff and Appellant.

R.J. Ryan Law, Richard J. Ryan and Marshall Shepardson for Defendant and Respondent.

\*     \*     \*

Plaintiff Youcef Yahiaoui appeals following summary judgment in this medical malpractice case against emergency room physician defendant Arturo Pelayo. He claims the trial court erroneously granted summary judgment on the ground that plaintiff's expert, in his declaration opposing the motion, failed to state several critical facts, including whether he believed Pelayo violated the standard of care. He also complains several of his evidentiary objections should have been sustained.

We disagree as to the evidentiary objections and conclude that the failure to create a triable issue as to breach of the standard of care was fatal to Yahiaoui's opposition to summary judgment. The motion was properly granted and the judgment is affirmed.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Pelayo is a board certified emergency medicine physician licensed to practice in California. On October 5, 2022, Pelayo was working in the emergency department at Fountain Valley Regional Hospital and Medical Center (FVRH). Yahiaoui was brought into the emergency department by paramedics, admitted at or around 11:53 a.m. At approximately 11:59 a.m., Pelayo saw Yahiaoui. He told "Pelayo that he had severe pain in the anal canal, that it started when Plaintiff was attempting to defecate, that he felt a solid object stuck in the rectal orifice . . . ." and the pain was so great he felt faint.

Pelayo's clinical diagnosis was abdominal pain and syncope (fainting). At or around 12:17 p.m., Yahiaoui underwent a CT scan of his abdomen and pelvis. At 12:27 p.m., an X-ray of Yahiaoui's chest was performed. Blood work and an EKG were also performed.

According to Yahiaoui, these tests were performed due to Pelayo's misapprehension that Yahiaoui was suffering abdominal pain when he was

2

only experiencing rectal pain. When he clarified this to Pelayo, Pelayo stated these were "checkups" to rule out other conditions.

None of the tests showed any acute findings. Pelayo was prepared to discharge Yahiaoui, but Yahiaoui "refused to go home." He complained Pelayo had "never checked the anal canal where the problem actually was" and stated that he "still had severe physical pain in the anal canal."

"At or around 1:50 p.m., Dr. Pelayo performed a digital rectal exam and removed a foreign body from [Yahiaoui]." Yahiaoui claimed the object removed was a chicken bone, but we were unable to find that information on the cited page of his medical records. Nonetheless, Pelayo does not dispute the foreign object was a bone of some kind.

Yahiaoui was discharged at approximately 2:31 p.m. His visit to the emergency department and resolution of his problem took approximately two hours and forty minutes from admission to discharge.

Yahiaoui filed his initial complaint on July 26, 2023. The operative first amended complaint (the complaint) was filed on November 27, and stated a single cause for medical negligence. The complaint alleged that Pelayo breached his duty of care, and as a result, Yahiaoui "incurred large medical expenses and needlessly experienced humiliation and severe pain for more than two hours." The "large medical expenses" alleged were $6,176.06. He also sought "at least $100,000 in general damages."

On September 9, 2024, Pelayo moved for summary judgment. Pelayo argued the undisputed evidence showed that he satisfied the standard of care applicable to an emergency medicine physician, and no act or omission of his was a substantial factor in causing injury. Further, Yahiaoui did not claim physical injury and his claim of serious emotional distress was not cognizable as a matter of law.

Pelayo's motion was supported by the declaration of Amir Rouhani, M.D. Rouhani, at the time of the declaration, was a physician specialist and hospitalist physician in emergency medicine (among other roles) at Olive View/UCLA. He had been board-certified in emergency medicine since 2012. He was "intimately familiar with the standards of care and practice applicable to an emergency medicine physician practicing in the Greater Los Angeles Metropolitan region and community" at the relevant time.

Rouhani reviewed all relevant documents in connection with the case, including the complaint and Yahiaoui's medical records. He opined that based on his review of the records and his education, training, and experience, "it is my opinion that Dr. Pelayo at all times met or exceeded the standards of care and practice applicable to him in the care and treatment of . . . Yahiaoui. . . . [T]he orders, assessments, treatment, and removal of foreign body performed by Dr. Pelayo were appropriate and within the standard of care. [¶] I understand that plaintiff is contending he complained of a possible foreign body immediately upon presentation to the Emergency Department at FVRH. Even if that is true, the foreign body was removed within a short and reasonable period of time within the standard of care. [¶] In an event where a patient complains of a possible foreign body, a CT of Abdomen and Pelvis without contrast and Chest X-ray are appropriate and within the standard of care. Such procedures are reasonable in order to help determine the location, size, and structure of a foreign body. Both procedures are also reasonable in diagnosing the symptoms of abdominal pain related to an inability to have a full bowel movement. [¶] [T]he presence of a foreign body is not an emergency or life-threatening presentation. Although there is no minimum amount of time in which a foreign body should be removed, less

4

than three hours is well within the bounds of a reasonable amount of time for a physician to evaluate, diagnose, and remove such foreign body. Dr. Pelayo reasonably and appropriately removed the foreign body before Mr. Yahiaoui was discharged less than three hours after he was admitted to the Emergency Department. [¶] In addition, nothing in Mr. Yahiaoui's medical records suggest that he suffered any injury. To the contrary, Mr. Yahiaoui was better off at discharge than he was when he was admitted earlier that day. The foreign body was removed appropriately and within a reasonable amount of time. There is no suggestion that Mr. Yahiaoui was injured during the process of removal of the foreign body."

In opposition, Yahiaoui filed evidentiary objections to most of Pelayo's evidence. He also relied on the declaration of his expert, William W. Spangler, M.D. According to Spangler's declaration, he had not been educated in California, nor had he ever worked in California. While he stated he was "familiar with the standard of care applicable to emergency medicine physicians practicing in the United States," he did not state he was familiar with the standard of care in California generally or southern California in particular.

Spangler declared he had reviewed the relevant documents and summarized the timeline of events. He then spent several paragraphs disagreeing with Rouhani's conclusions, for example: "Dr. Rouhani concluded that Dr. Pelayo's conduct in ordering the tests described above . . . was reasonable because the tests were necessary for 'diagnosing the symptoms of abdominal pain.' I respectfully disagree with this reasoning because it is predicated on the assumption that Plaintiff indeed had symptoms of abdominal pain. This assumption is inconsistent with Plaintiff's declaration where Plaintiff declared that he never complained about abdominal pain

5

because he did not have pain in his abdomen; Plaintiff complained only about pain in his anal canal." (Footnotes omitted.) He then spent considerable time discussing whether ordering the tests was reasonable.

Spangler then went on to disagree with Rouhani's statement that the time from Yahiaoui's admission to the removal of the foreign object was reasonable because Rouhani's statement was "unduly generalized and does not answer the question of whether in *this* case the two-hour time period was reasonable."

The final paragraph of the declaration stated: "Was it reasonable for Dr. Pelayo to order the tests and not perform an appropriate and timely physical examination, including a rectal examination? For the reasons explained above, I will assume that (i) all facts stated in Plaintiff's declaration are true, and (ii) Dr. Pelayo ordered the tests partially based on his belief that Plaintiff had symptoms of abdominal pain whereas in fact he did not have such symptoms. With these assumptions in mind, I conclude that a rectal examination, performed as part of the initial physical examination, would have discovered the rectal foreign body, leading to its removal earlier than occurred in this instance."

Thus, Spangler's declaration states, in essence, that if Pelayo had done the rectal exam earlier, the foreign object would have been removed sooner. What it did not say anywhere is that Rouhani violated the standard of care for emergency room physicians in California.

Pelayo filed evidentiary objections to Spangler's declaration and a reply brief.

On February 10, 2025, the court overruled both parties' evidentiary objections and granted Pelayo's motion for summary judgment. The court found, among other things, that "Dr. Spangler does not state he is

6

familiar with the standard of care for emergency department physicians in the State of California. Even assuming Dr. Spangler is qualified to opine regarding the applicable standard of care, Dr. Spangler does not state whether he believes Defendant breached the standard of care. In summary, Dr. Spangler merely states there is a dispute about whether Plaintiff described anal or abdominal pain upon presenting at the emergency department, and a digital examination could have led to earlier removal of the foreign body."

Yahiaoui now appeals.

DISCUSSION

I.

STATUTORY FRAMEWORK AND STANDARD OF REVIEW

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. [Citation.] A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. [Citation.] A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636–637.)

"We review the trial court's decision de novo, considering all evidence the parties offered in connection with the motion . . . and the uncontradicted inferences the evidence reasonably supports." (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 148.)

7

## II.

### PELAYO'S BURDEN

As noted above, Pelayo must demonstrate that one or more elements of Yahiaoui's causes of action cannot be established as a matter of law as to each cause of action, or that a complete defense exists. (*Grebing v. 24 Hour Fitness USA, Inc., supra,* 234 Cal.App.4th at pp. 636–637.)

"The elements of a medical malpractice claim are: ""(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."""" (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 468, fn. 2.)

Although Pelayo's motion below focused on several elements of medical malpractice, we need only focus on one, the standard of care. With his motion for summary judgment, Pelayo submitted Rouhani's declaration. While we set forth his opinions above in detail, it can be boiled down to the following: "Mr. Yahiaoui contends that he complained about a possible foreign body immediately upon presentation to FVRH. Even if we assume that is true, there is no support for the allegations of Dr. Pelayo performing unnecessary procedures in the pertinent medical records. To the contrary, there is satisfactory documentation and evidence that Dr. Pelayo's orders, assessments, treatment, and removal of foreign body were all fully within, or exceeding, the applicable standards of care and practice. Overall, there is satisfactory documentation and evidence that all treatment rendered by Dr. Pelayo was appropriate and that no act or omission by Dr. Pelayo was a substantial factor in any alleged injury of plaintiff Mr. Yahiaoui."

Pelayo met his burden as the party moving for summary judgment by submitting evidence that the plaintiff could not establish a required element of his cause of action. (*Grebing v. 24 Hour Fitness USA, Inc., supra,* 234 Cal.App.4th at pp. 636–637.) The burden therefore shifted to Yahiaoui to demonstrate a triable issue of material fact.

III.

YAHIAOUI'S BURDEN

*A. Spangler Declaration*

The Spangler declaration was insufficient to create a triable issue of fact as to the standard of care for two reasons. First, Spangler failed to establish he was qualified to opine on the standard of care for emergency medicine in California. Health & Safety Code section 1799.110, subdivision (c) states, in relevant part: " In any action for damages involving a claim of negligence against a physician and surgeon providing emergency medical coverage for a general acute care hospital emergency department, the court shall admit expert medical testimony only from physicians and surgeons who have had substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department. For purposes of this section, 'substantial professional experience' shall be determined by the custom and practice of the manner in which emergency medical coverage is provided in general acute care hospital emergency departments in the same or similar localities where the alleged negligence occur[r]ed."

Spangler's resume, which was submitted as an exhibit to his declaration, stated he had been working since 2009 as the medical director of

9

Travel Guard, which is a travel insurance company.[1] This did not establish he "had substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department." Nor did it meet the requirement of working "in general acute care hospital emergency departments in the same or similar localities where the alleged negligence occur[r]ed." (Health & Saf. Code, § 1799.110, subd. (c).)

The purpose of this statute is to prevent physicians who have not recently worked as emergency room doctors in the same or a similar locality from "Monday morning quarterbacking" the actions of such doctors. (*Charlie L. v. Kangavari* (2025) 107 Cal.App.5th 1117, 1127.) Spangler has been working in a nonclinical, nonemergency setting since at least 2009, more than 10 years prior to the acts that are the basis for this lawsuit. He was simply not qualified to be an expert in this case, and for that reason alone, the court could properly have disregarded his declaration.

Moreover, Spangler's declaration is insufficient on another critical ground. "'[S]tandard of care[] is the key issue in a malpractice action and can only be proved by expert testimony, unless the circumstances are such that the required conduct is within the layperson's common knowledge.'" (*San Antonio Regional Hospital v. Superior Court* (2024) 102 Cal.App.5th 346, 350.) Spangler simply never opined on the standard of care. He did not say what the standard of care was, and more to the point, he did not say that Pelayo's actions violated the standard of care. Without expert testimony on this point, Yahiaoui has not met his burden to demonstrate a triable issue of fact.

---

[1] See https://www.travelguard.com. (as of Mar. 13, 2026), archived at https://perma.cc/SPV5-JAK9.

Because the standard of care element constitutes sufficient grounds to support the trial court's decision, we need not consider Pelayo's alternate argument as to the lack of damages.

*B. Res Ipsa Loquitur*

Yahiaoui claims the trial court should have applied the doctrine of res ipsa loquitur (res ipsa) and denied the motion for summary judgment. This exception to the general rule requiring expert testimony as to the standard of care is called the "common knowledge" exception. "The 'common knowledge' exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.'" (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001.) "The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery." (*Ibid.*) As a general rule, "[r]es ipsa loquitur applies where the occurrence of the injury is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible." (*Davis v. Memorial Hospital* (1962) 58 Cal.2d 815, 817.)

Yahiaoui's opening brief does not cite any similar cases where the res ipsa doctrine has been applied to defeat summary judgment. He waited until his reply brief, where Pelayo is unable to respond, to cite the well-seasoned case of *Engelking v. Carlson* (1939) 13 Cal.2d 216, disapproved by *Seneris v. Haas* (1955) 45 Cal.2d 811, 827, which cites three examples of res ipsa in a medical setting: where the patient was burned by the application of hot compresses, a heating apparatus, or an X-ray machine, and where the

11

patient contracted an infection due to the use of an unsterilized hypodermic needle. (*Id.* at p. 221.) Obviously, none of these circumstances bears even a vague similarity to the facts before us, and Yahiaoui does not argue otherwise.

Nonetheless, he claims we should apply the doctrine here. We disagree. Res ipsa, which at its heart is a presumption affecting the burden of producing evidence, requires an event which ordinarily does not occur in the absence of negligence. (*Elcome v. Chin* (2003) 110 Cal.App.4th 310, 316.) For example, a patient gets an infection from the use of an unsterilized needle. (*Engelking v. Carlson, supra,* 13 Cal. 2d at p. 221.)

In *Elcome v. Chin, supra,* 110 Cal.App.4th 310, the plaintiff alleged she suffered neck pain following pelvic surgery. She argued res ipsa should apply, contending "that it is within common knowledge that a person should not develop injury to their neck and upper extremities as a result of an operation focused in the pelvic area. Therefore, she argues, the evidence showed that at least one of the defendants must have been or probably was negligent and caused her injuries." (*Id.* at p. 318.) The court disagreed, stating: "This is not a case where a foreign object was left in plaintiff's body following an operation, for which there is *no explanation* other than that someone failed to exercise due care." (*Ibid.*)

Here, Yahiaoui asks us to apply res ipsa to a context where he suffered no physical injury as a result of anything Pelayo did or did not do. The majority of his claimed damages are $100,000 or more in general damages, asserting that he was in pain for two hours longer than he would have been if Pelayo had immediately performed a rectal exam on admission. He claims he experienced "significant emotional distress" *after* the foreign object was removed. "This emotional distress was a result of humiliation,

12

demoralization and shame caused by Dr. Pelayo's conduct in not bothering to examine the area where the pain was, persistently ignoring [Yahiaoui] complaining that the pain was in the anal canal . . . ." But this only begs the question of whether Pelayo acted within the standard of care in the first place; it does not suggest obvious negligence. This is simply not an instance where res ipsa is appropriate to reduce Yahiaoui's burden of producing evidence.

Indeed, Yahiaoui failed to produce the evidence needed to defeat summary judgment. He failed to offer the testimony of a qualified emergency room physician to opine that Pelayo's acts were outside the standard of care. Summary judgment was therefore appropriate.

IV.

EVIDENTIARY OBJECTIONS

The trial court overruled Yahiaoui's objections to most of the exhibits that Pelayo submitted in support of summary judgment. He contends that on appeal, we should review the trial court's objections that would favor him de novo, and any that would favor Pelayo for abuse of discretion. "There is a split of authority on [the standard of review of] evidentiary objections made in connection with a motion for summary judgment . . . ." (*Martin v. Trustees of the California State University* (2023) 97 Cal.App.5th 149, 161.) Most appellate courts have applied the abuse of discretion standard, while some have used the de novo standard. (*LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946, fn. 3 [citing abuse of discretion cases].) "We will follow

13

the weight of authority and apply the abuse of discretion standard." (*Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1118.)[2]

*A. Medical Records*

Yahiaoui objected to the exhibit that included his own medical records on the grounds they were not properly authenticated and were admitted for a hearsay purpose. (He does not contest the medical records are authentic in this court and did not make such an argument in the trial court.) The medical records were attached to the declaration of defense attorney Christina Kim, who stated: "Attached hereto as Exhibit B is a true and correct copy of Plaintiff's medical records from Fountain Valley Regional Hospital and Medical Center, including a Declaration of Custodian of Records certifying that they were prepared in the ordinary course of business at or near the times of the acts, conditions and events reflected therein . . . ."

Yahiaoui's sole claim is that "Kim may not testify as to authenticity of Exhibit B because she may not act as Dr. Pelayo's counsel and as a witness at the same time even if Dr. Pelayo consents." The case he cites for this proposition, *Lopez v. Lopez* (2022) 81 Cal.App.5th 412, 423, is a disqualification motion that has nothing to do with the admissibility of evidence. Yahiaoui does not provide any analysis whatsoever as to the business records rule, nor does he establish the records were offered for a hearsay purpose. Accordingly, we find Yahiaoui has not met his burden to establish an abuse of discretion or reversible error. (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492.)

---

[2] Ultimately, which standard of review applies makes little difference in this case. The result would be the same under the de novo standard of review.

14

*B. Pelayo's Resume*

Next, Yahiaoui asserts the court erred by admitting Pelayo's resume because it "was not properly authenticated and thus it amounted to hearsay." As she did with the medical records, Kim stated in her declaration that the exhibit was "a true and correct copy" of Pelayo's resume. Yahiaoui again relies solely on the inapposite case of *Lopez v. Lopez, supra,* 81 Cal.App.5th at page 423, for the proposition that counsel cannot authenticate a document. He has again failed to establish error.

*C. Rouhani's Declaration*

Yahiaoui objected to Rouhani's declaration generally on the grounds that "it would not assist a trier of fact." He argued Rouhani did not have personal knowledge of any facts in the case and his statements did not qualify as expert opinion.[3] Rouhani, however, was testifying as an expert witness within the scope of Evidence Code sections 801 and 802. He was explicitly permitted to testify with respect to his special knowledge on the standard of care and the extent of Yahiaoui's purported injuries. (See *People v. Presley* (2021) 65 Cal.App.5th 1131, 1141–1142.) There was no error in admitting his declaration.

---

[3] Yahiaoui also argued Rouhani relied on the medical records and Pelayo's resume, which he contended were inadmissible. We have already rejected those arguments, and we reject his related arguments regarding Rouhani's declaration.

## DISPOSITION

The judgment is affirmed. Pelayo is entitled to his costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


BANCROFT, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.