Filed 1/7/26  Weidemier v. Thousand Oaks Surgery Center CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KELLI WEIDEMIER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THOUSAND OAKS SURGERY CENTER, LLC, et al.,<br><br>Defendants and Respondents. | 2d Civ. No. B336569<br>(Super. Ct. No. 56-2018-00513868-CU-MM-VTA)<br>(Ventura County) |

Kelli Weidemier brought a medical malpractice action against respondents Dr. Kapil Moza, Thousand Oaks Surgery Center, LLC (Surgery Center), and Virtuoso Medical Management, Inc. (Virtuoso).  She appeals from the judgment entered in favor of respondents after a jury returned a special verdict finding that they had not negligently treated her.

Appellant advances nine grounds for reversing the judgment.  She contends: (1) the evidence is insufficient to support the finding that Dr. Moza was not negligent, and (2) the

application of the doctrine of res ipsa loquitur should have resulted in a verdict in her favor. In addition, appellant claims the trial court erroneously: (3) admitted evidence of a $500,000 payment she had received in settlement of her action against a codefendant, (4) admitted hearsay evidence in support of the opinion of respondents' expert, (5) restricted her cross-examination of the expert, (6) instructed the jury on the law of causation, (7) refused to instruct the jury on the law of agency, (8) quashed her subpoena duces tecum, and (9) denied her motion for a new trial and for judgment notwithstanding the verdict (JNOV).

Appellant has moved for permission to file a second reply brief. We deny the motion and affirm.

*Factual Background*

In October 2017 appellant underwent posterior cervical spine surgery (surgery through the back of the neck) at Surgery Center. Dr. Moza was the surgeon. The anesthesiologist was Dr. Bradley Spiegel.

Before beginning the surgery, Dr. Moza applied ChloraPrep, an antiseptic solution, to appellant's skin at the surgical site. ChloraPrep contains chlorhexidine. Dr. Moza made two applications of ChloraPrep, each in the amount of 26 milliliters, "in order to super sterilize the area." Dr. Moza testified: "I was trained in my residency and my fellowship to do two [applications] for infection prophylaxis." "The reason we use chlorhexidine is because of its superior properties in terms of fighting infection or preventing infection compared to the alternative, which is Betadine . . . ."

After applying the ChloraPrep, Dr. Moza watched it dry. But without Dr. Moza's knowledge, chlorhexidine "trickled" into

2

appellant's left eye, severely damaging it. Despite 10 eye surgeries, appellant claimed to be "almost a hundred percent blind" in the left eye.

According to Dr. Moza, it was the responsibility of the anesthesiologist, Dr. Spiegel, to check appellant's eyes during the surgery. Dr. Moza explained that he could not see her eyes because she was "face down in a frame" and was covered by a blue drape. Dr. Spiegel, on the other hand, "literally ha[d] access to the patient's head, and face, eyes." He was supposed to be "watching and monitoring the [patient's] eyes continuously through the surgery."

*Claim that Substantial Evidence Does Not*
*Support No Negligence Finding as to Dr. Moza*

Appellant claims, "[T]he record as a whole does not demonstrate substantial evidence in support of the appealed judgment finding no negligence on Dr. Moza's part, and the judgment should be reversed." The claim is forfeited because in her "opening brief, [appellant] ignore[s] evidence supporting the judgment." (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 415.) Appellant sets forth only the evidence favorable to her. "An appellant asserting lack of substantial evidence must fairly state all the evidence, not just the evidence favorable to the appellant. [Citation.] . . . [¶] If the appellant fails to fairly state all material evidence, we may deem waived any challenge based on insufficiency of the evidence." (*Id.*, at pp. 415-416.) "An appellant cannot salvage a forfeited argument by belatedly addressing the argument in its reply brief." (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 573, fn. 18.)

Even if the claim were not forfeited, we would conclude that substantial evidence supports the jury's finding that Dr. Moza was not negligent. "In reviewing a claim of insufficiency of evidence, the appellate court must consider the whole record, view the evidence in the light most favorable to the judgment, presume every fact the trier of fact could reasonably deduce from the evidence, and defer to the trier of fact's determination of the weight and credibility of the evidence." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 614.) "'[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury.'" (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 889.) "'If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. . . .'" (*People v. Overstock.Com., Inc.* (2017) 12 Cal.App.5th 1064, 1079.)

"[I]n "'any medical malpractice action, the plaintiff must establish: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' . . .'"" (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122.) "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts' [citation], expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a

4

layperson." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.)

The testimony of Dr. Moza and his expert witness, Dr. Duncan McBride, constitutes substantial evidence that Dr. Moza complied with the applicable standard of care. Dr. Moza explained that, before he applied the ChloraPrep, he had isolated the surgical area by placing "boundary drapes" around the area: "the drapes have an adhesive boundary on them. So we sort of make a sequestered area, which is all you see is the incision, and then you have these drapes. [¶] The purpose and reason to use those drapes is just to prevent pooling, or inadvertent trickling, or traveling of these fluids anywhere outside the field. So those [drapes] were applied." "[T]here are actually four separate drapes. You peel off the adhesive tape. . . . And then you put one side. Then you peel off another piece of paper, the second side, and then the third and the fourth, because you have a rectangle that has four sides." "Once we know that the drapes are adhesed and they're not moving around, then you proceed to the second step, which is chlorhexidine, which is the ChloraPrep."

Dr. Moza made two applications of ChloraPrep to the surgical site. The standard of care is to allow at least three minutes for each application to dry. Appellant acknowledges that "[t]he drying time of chlorhexidine is about three minutes."

Dr. Moza assumed the responsibility for assuring that the ChloraPrep had dried. He testified: "I applied the chlorhexidine. I watched it dry. I applied the second application, watched it dry." He "made sure [the ChloraPrep] didn't pool." Two beams of light were focused on the area where the ChloraPrep was applied. The light functioned "like a heat lamp" to expedite the drying process.

5

The ChloraPrep had not completely dried when it trickled into appellant's eye. Dr. Moza and Dr. McBride testified that the ChloraPrep had trickled into her eye "as a liquid." They did not explain how this had happened.

Dr. Moza was not negligent merely because liquid ChloraPrep got into appellant's eye. Dr. Moza testified that he had watched the first application of ChloraPrep dry for "[a]pproximately three minutes." He further testified that "[a]bout four minutes" elapsed between the first and second applications of the ChloraPrep. He waited the requisite three minutes for the second application to dry. He then went to a "scrub sink" and did "a five-minute scrub [of his hands and forearms] for sterility."

Dr. McBride testified, "I found no breach of the standard of care of Dr. Moza's treatment of [appellant] . . . ." For 33 years Dr. McBride was a professor at UCLA Medical Center and Harbor-UCLA Medical Center, where he performed neurosurgery. He performed at least one thousand posterior cervical spine surgeries, the same type of surgery that Dr. Moza performed on appellant. Dr. McBride opined: "[I]t is not at all unreasonable to use two 26 milliliter applicators of this product [ChloroPrep]. It was fairly standard practice in places, so I don't think you could possibly call it below the standard of care." "I know they use it at UCLA Medical Center, as well as Harbor-UCLA Medical Center where I worked, and Santa Monica UCLA Hospital as well." "[I]n the case of chlorhexidine, usually you use two applications because it dries. It's like a solvent. So it dries, and then you put it on again to kill as many bugs as you can."

Dr. McBride further testified that, during the surgery, the patient's "face is completely out of [the surgeon's] view." The

6

anesthesiologist is responsible for "checking the [patient's] face to make sure . . . that the eyes are protected."

*Res Ipsa Loquitur*

As to Dr. Moza, the trial court instructed the jury pursuant to the doctrine of res ipsa loquitur. Appellant contends, "The doctrine of res ipsa loquitur, and the evidentiary presumption thereof, should have resulted in a jury verdict in Appellant's favor."

"[T]he doctrine of res ipsa loquitur is defined by statute as 'a presumption affecting the burden of producing evidence.' (Evid.Code, § 646, subd. (b).) The presumption arises when the evidence satisfies three conditions: "'(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff."' [Citation.] A presumption affecting the burden of producing evidence 'require[s] the trier of fact to assume the existence of the presumed fact' unless the defendant introduces evidence to the contrary. [Citations.] The presumed fact, in this context, is that 'a proximate cause of the occurrence was some negligent conduct on the part of the defendant . . . .' (*Id.,* § 646, subd. (c)(1).) If the defendant introduces 'evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence,' the trier of fact determines whether defendant was negligent without regard to the presumption, simply by weighing the evidence. (*Id.,* § 646, subd. (c) . . . .)" (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 825-826 (*Brown*).)

7

Assuming, for purposes of discussion, that the evidence was sufficient to warrant application of the res ipsa loquitur doctrine, appellant has not shown that Dr. Moza failed to introduce "'evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence.'" (*Brown, supra,* 4 Cal.4th at p. 826.) Appellant's expert opined that Dr. Moza had committed malpractice. Dr. Moza's expert opined to the contrary. The jury credited the opinion of Dr. Moza's expert. This rebutted the presumption created by the doctrine of res ipsa loquitur.

*Admission of Evidence that Appellant*
*Received a Payment of $500,000*

Dr. Spiegel was named as a codefendant in appellant's complaint. Before the trial began, Dr. Spiegel reached a $500,000 settlement with appellant and was dismissed from the action.

At trial appellant testified that, after the injury to her eye, she had been unable to return to work. She considered herself to be "disabled" and impoverished. She did not "have any money." She was forced to move out of her home because she could not pay the rent. She had not visited her daughter in Kentucky "[b]ecause [she] can't afford to go [there]." Her spinal stimulator implant was not functioning because "[i]t needs a new battery, and I don't have the money to pay for the surgery" to replace the battery.

Respondents contended that, because appellant had "put her financial condition in issue," they should be able to show that she had received the $500,000 settlement from Dr. Spiegel. To impeach her testimony that she was impoverished, the trial court admitted evidence that appellant had received a $500,000

8

payment.  But the court ruled that the source of the payment (Dr. Spiegel) would not be disclosed to the jury.

Appellant objected to the admission of the evidence.  After her objection was overruled, the parties agreed that, in lieu of testimony on the issue, the jury would be instructed: "In April 2020 [appellant] received $500,000.  Her monthly living expenses total $4,500.  She has incurred medical and litigation expenses since her injury."  The jury was so instructed.

Appellant claims the trial court erred in admitting evidence of the $500,000 payment.  She argues: "The $500,000 settlement from Dr. Spiegel does not undermine [her] testimony about her financial and medical struggles and cannot serve as proper impeachment."  "The $500,000 receipt of funds . . . allowed the jury to infer that Appellant had already been compensated via settlement with Dr. Spiegel, which likely influenced their determination of liability and damages."  "It created the perception that any further award would unduly enrich her . . . ."

"We review for abuse of discretion a trial court's rulings on the admissibility of evidence."  (*People v. Cowan* (2010) 50 Cal.4th 401, 482.)  "'A trial court abuses its discretion when its decision exceeds the bounds of reason by being arbitrary, capricious or patently absurd in light of the circumstances. . . .'" (*People ex rel. Elliott v. Kaiser Foundation Health Plan, Inc.* (2024) 105 Cal.App.5th 1114, 1130.)

The trial court did not abuse its discretion.  The impeachment evidence concerned appellant's credibility and was therefore highly relevant.  Evidence Code section 780 states, "Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the

9

truthfulness of his testimony at the hearing . . . ." To minimize the prejudice to appellant, the court ruled that the jury would not be informed that the $500,000 payment came from Dr. Spiegel.

Appellant contends that, during closing argument, Dr. Moza's counsel "invited the jury to connect the dots and infer that the $500,000 was related to a settlement with Dr. Spiegel." Counsel said: "[I]t is the responsibility of Dr. Spiegel [to protect appellant's eyes during the surgery]. [¶] Now, you know Spiegel was previously in the case, and you know that in 2020 [appellant] got $500,000. You know that Dr. Spiegel is no longer in the case. Work through that." Appellant did not object.

Appellant does not claim that the above argument constituted misconduct. She asserts, "The problem lies not with the argument but with the court's earlier ruling, which clearly leads to an inference about a settlement." But we have determined that the earlier ruling did not constitute an abuse of discretion.

If appellant had claimed that counsel's argument constituted misconduct, she would have forfeited the issue by not objecting in the trial court. (*Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 598 ["To preserve a claim of attorney misconduct for appeal, a timely and proper objection must have been made at trial; otherwise, the claim is forfeited"].)

*Admission of Hearsay Evidence in Support*
*of Expert's Opinion as to the Standard of Care*

Dr. Gregory Yoshida testified as an expert witness for Surgery Center. He opined that two applications of ChloraPrep, each in the amount of 26 milliliters, "is now the standard of care for any posterior cervical spine surgery." Dr. Yoshida explained: "We have been doing that ever since ChloraPrep came out and

10

proved it was superior in preventing infections in cervical sites." "We have a strict regime per a very good article done by Dr. Dan Riew." Appellant asserts that, over her hearsay objection, the trial court erroneously permitted Dr. Yoshida to testify about "the details and substance" of Dr. Riew's article.

Dr. Yoshida testified: "[T]his article used an alcohol foam followed by a chlorhexidine sponge, . . . and then a ChloraPrep times two. [¶] When they did this procedure, infection rate in their . . . 200 or 250 patients was 1, which was amazing. And then they added half a gram of Vancomycin powder at the end of surgery, but they only covered, I think, 50 cases; they had zero infections. . . . [¶] The most significant portion of it was the fact that there was a prep by alcohol, then followed by two preps of ChloraPrep."

The trial court did not abuse its discretion in overruling appellant's hearsay objection. "[T]o support his opinion, an expert is permitted to relate to the jury background information that is technically hearsay, including general knowledge and 'premises generally accepted in his field.'" (*People v. Veamatahau* (2020) 9 Cal.5th 16, 21 (*Veamatahau*).) "Because experts rely on hearsay knowledge and because a jury 'must independently evaluate the probative value of an expert's testimony,' including by assessing the basis of the expert's opinion, the expert is entitled to tell the jury the basis or '"matter" upon which his opinion rests.' [Citation.] Hence, '[i]n addition to matters within their own personal knowledge, experts may relate information acquired through their training and experience, even though that information may have been derived from conversations with others, lectures, study of learned treatises, etc.'" (*Id.,* at p. 25.)

11

Dr. Yoshida's testimony about Dr. Riew's article "is the kind of background information experts have traditionally been able to rely on and relate to the jury." (*Veamatahau, supra,* 9 Cal.5th at p. 27.) It does not constitute inadmissible hearsay.

*Alleged Restriction of Appellant's*
*Cross-examination of Dr. Yoshida*

Dr. Yoshida testified via Zoom. Appellant argues that she was denied the opportunity to cross-examine him concerning his pretrial deposition. "This left appellant unable to fully cross-examine Dr. Yoshida on the standard of care issue . . . ."

The trial court did not restrict appellant's cross-examination of Dr. Yoshida as to his deposition. At the beginning of cross-examination, the following colloquy occurred among appellant's counsel, Dr. Yoshida, and the court:

"[Counsel:] . . . [D]o you have a copy of your deposition there with you?

"[Dr. Yoshida:] I do not. I'm sorry.

"[Counsel]: Your Honor, I'm going to need him to have a copy of his deposition to proceed.

"THE COURT: Why?

"[Counsel]: All right. I guess I won't."

Appellant's argument on appeal is forfeited because the above colloquy shows that counsel abandoned the issue by not answering the trial court's reasonable inquiry why Dr. Yoshida needed a copy of his deposition. The court did not rule on counsel's claim of need. It merely asked, "Why?" (See *People v. Ennis* (2010) 190 Cal.App.4th 721, 735-736; *California Union Square L.P. v. Saks & Co. LLC* (2020) 50 Cal.App.5th 340, 354, fn. 6 ["forfeiture . . . is the proper term to use when referring to

12

"'the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court'""].)

*It Is Irrelevant Whether the Jury Was*
*Properly Instructed on Causation*

Appellant contends the trial court erred in instructing the jury on causation. We need not consider her claim because the instruction on causation is irrelevant. The jury never reached the issue of causation because it decided that respondents were not negligent. (*Vahey v. Sacia* (1981) 126 Cal.App.3d 171, 180 ["The error in refusing to instruct was harmless . . . because [the instruction] went only to damages, and . . . the jury found respondent not to be negligent or her negligence not to be the cause of the injury. Thus it never reached the issue of damages"].)

*Trial Court's Refusal to Give Instruction on Agency*

Appellant asserts that the trial court erroneously refused to instruct the jury on the theory that Surgery Center and Virtuoso are liable for Dr. Spiegel's negligence because he had acted as their agent during appellant's surgery. "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)

The refused instruction was CACI No. 3705, which provides: "[*Name of plaintiff*] claims that [*name of agent*] was [*name of defendant*]'s agent and that [*name of defendant*] is therefore responsible for [*name of agent*]'s conduct. [¶] If [*name of plaintiff*] proves that [*name of defendant*] gave [*name of agent*] authority to act on [his/her/*nonbinary pronoun*/its] behalf, then [*name of agent*] was [*name of defendant*]'s agent. This authority

13

may be shown by words or may be implied by the parties' conduct. This authority cannot be shown by the words of [*name of agent*] alone."

Dr. Spiegel was the medical director of Surgery Center. He testified that in this capacity he primarily performed administrative work. He did not "supervise any [medical] procedures." He "gathered" that he was an employee of either Virtuoso or "Pain Management & Injury Relief."

Dr. Alexander Hersel, "the principal" of Surgery Center and Virtuoso, testified that Dr. Spiegel was not an employee of Surgery Center. He indicated that Dr. Spiegel was also not an employee of Virtuoso: "[Virtuoso] does have employees, but . . . the employees are like my wife . . . that would . . . make sure HR [human resources] issues have been addressed, or it might be a gentleman that does the revenue cycle or the billing component of it, but nothing clinical."

According to Dr. Hersel, "Dr. Spiegel was actually an employee of Pain Management & Injury Relief," Dr. Hersel's "pain management practice." The trial court stated: "Dr. Hersel specifically explained that Dr. Spiegel is an employee of Pain Management Group, which is not a defendant, and that Virtuoso is a management company that just employs people for HR and other things and pays the checks."

The trial court refused to give the instruction on agency because "the evidence" showed that Dr. Spiegel had acted as "an independent contractor" during the surgery. The court observed that, before the surgery, appellant had signed a consent form stating: "The persons in attendance for the purpose of performing specialized medical services such as, *anesthesia* or pathology, are not agents, servants, or employees of the ASC [ambulatory

14

surgical center] or surgeon.  They are independent contractors and therefore are *your* [i.e., the patient's] agents, servants, employees or medical representatives."  (Italics added.) Appellant testified that she "believe[d]" she had reviewed the consent form before signing it.

"An appealed judgment or challenged ruling is presumed correct.  [Citations.]  An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority.  [Citations.] Accordingly, we cannot conclude that the refusal to give an instruction was error absent an adequate showing that the proposed instruction was proper," i.e., it was supported by substantial evidence.  (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685.)  ""'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value.  [Citation.]  "Substantial evidence . . . is not synonymous with 'any' evidence." . . . Speculation or conjecture alone is not substantial evidence.'"  (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 24, fn. 21.)

Appellant has failed to establish that the proposed instruction on agency was proper.  She has not directed us to substantial evidence in the record showing that Dr. Spiegel acted as respondents' agent or employee during the surgery.  In particular, she has not shown that respondents had the right to control the manner in which Dr. Spiegel administered the anesthesia and monitored the patient during the surgery.  "'In the absence of the essential characteristic of the right of control, there is no true agency and, therefore, no "imputation" of the [alleged agent's] negligence to the [alleged principal].  [Citations.] . . . "The doctrine of *respondeat superior* sought here to be

15

invoked . . . must necessarily be based upon a relationship between two parties by which one has the legal right to direct the activities of the other and the latter the legal duty to submit to such direction.”’” (*Franklin v. Santa Barbara Cottage Hospital* (2022) 82 Cal.App.5th 395, 404.)

*Appellant Forfeited Claim that Trial Court*
*Erroneously Quashed Subpoena Duces Tecum*

During the trial, appellant served on Surgery Center a subpoena duces tecum requiring it to produce documents relating to its policies and procedures at the time of appellant’s surgery. Respondents moved to quash the subpoena because “it is untimely, invalid, and is in violation of the discovery act.”

The motion to quash was filed on December 4, 2023. That same day, the trial court asked appellant’s counsel if he wanted to respond in writing to the motion. Counsel replied: “Yeah. I haven't even read it yet.” The trial court deferred ruling on the motion.

Counsel did not file a response. On December 8, 2023, four court days after the filing of the motion to quash, the parties rested. After respondents had completed their closing arguments and before appellant began her rebuttal, the trial court said it had never received a response from appellant as to the motion to quash. The court continued, “At this point, it’s probably a moot point, but I wanted just to . . . make sure we have a clear record that the motion to quash was granted.” Appellant did not object.

Appellant claims the trial court erroneously granted the motion to quash. The claim is forfeited because appellant neither filed a response to the motion nor objected to the ruling on the motion. “[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not

16

made in the trial court.  [Citation.]  The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

*Appellant's Motion to File a Second Reply Brief*

On February 20, 2025, Dr. Moza filed his respondent's brief.  On March 5, 2025, Surgery Center and Virtuoso filed their joint respondents' brief.  On March 11, 2025, appellant filed a 46-page brief replying to Dr. Moza's brief.  On March 24, 2025, appellant attempted to file a brief replying to Surgery Center's and Virtuoso's joint respondents' brief.  The court clerk did not file the second reply brief.  The clerk informed appellant that she had already filed a reply brief and "any additional briefs must be accompanied with a motion requesting leave to file."

On April 1, 2025, appellant filed the motion along with a proposed 46-page brief replying to Surgery Center's and Virtuoso's brief.  In the motion appellant states: "Four of the errors raised on appeal relate to all of the Respondents, and two additional errors pertain solely to [Surgery Center and Virtuoso]. . . . [¶] . . . The reply brief as to Dr. Moza addresses the four errors on appeal that relate to him.  The proposed reply brief as to [Surgery Center and Virtuoso] addresses all six errors on appeal that relate to them. . . .  Appellant cannot adequately address all arguments and issues raised in the (two) Respondents' briefs in a single reply brief."

Surgery Center and Virtuoso filed opposition to the motion.  They note that the reply briefs together consist of 27,470 words (13,577 words for the first and 13,893 for the second brief), almost twice the 14,000 word-limit for a reply brief.  (Cal. Rules

17

of Court, rule 8.204(c)(1).)[1]  They object that appellant failed to request permission to file a longer brief and show good cause for exceeding the 14,000-word limit.  (Rule 8.204(c)(6) ["On application, the presiding justice may permit a longer brief for good cause"].)  They observe that "at . . . times [the second reply brief] duplicates and reargues what was argued in the first 'Reply Brief.'"[2]

Surgery Center and Virtuoso also object that the second reply brief "raises new issues and claims that were not addressed in the Opening Brief."  (See *High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 112 ["New arguments may not be raised for the first time in an appellant's reply brief"].)

Appellant should have filed a single reply to all respondents' briefs.  California Rules of Court, rule 8.200(a)(3)

---

[1] All further references to rules are to the California Rules of Court.

[2] For example, the second argument of the first reply brief is entitled, "THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING EVIDENCE OF APPELLANT'S SETTLEMENT WITH DR. SPIEGEL."  The second argument of the second reply brief is entitled, "IT WAS ERROR TO ADMIT EVIDENCE OF THE $500,000 PAYMENT TO APPELLANT IN 2020, CONSISTING OF APPELLANT'S SETTLEMENT WITH DR. SPIEGEL."  The third argument of the first reply brief is entitled, "ADMISSION OF TESTIMONY BY DR. YOSHIDA REGARDING DR. DAN RIEW'S RESEARCH ARTICLE WAS PREJUDICIAL ERROR."  The third argument of the second reply brief is entitled, "THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING DR. YOSHIDA TO TESTIFY AS TO THE DETAILS OF THE RESEARCH STUDY."  Appellant should not be allowed to get two bites at the apple by filing a second reply brief that reargues the same issues raised in the first reply brief.

provides, "Each appellant may serve and file *a* reply brief."
(Italics added.) The rule does not say that, if there are multiple respondents' briefs, an appellant may file a separate 14,000-word reply to each respondent's brief. "If there are two respondents and one files its brief on time but the other obtains an extension, the appellate court will likely treat the filing of the later respondent's brief as triggering a 20-day deadline for filing a single appellant's reply brief replying to both respondents' briefs. Counsel should check with the appellate court clerk to confirm such treatment." (Rutter Group, Cal. Prac. Guide Civ. App. & Writs (2024) Ch. 9-D, ¶ 9:251.1.)

This court should not have the burden of reviewing two 46-page reply briefs, substantial portions of which cover the same issues, when a single 46-page brief within the 14,000-word limit would suffice. Accordingly, the motion to file a second reply brief is denied.

*Appellant Forfeited Argument in First Reply Brief that Trial Court Erroneously Denied Motion for New Trial and for JNOV*

Section VI of appellant's first reply brief, i.e., the reply to Dr. Moza's brief, is entitled, "**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR NEW TRIAL**." Section VI includes a subsection with the heading "**JNOV**." In the subsection appellant contends the trial court erroneously denied her motion for judgment notwithstanding the verdict.

Both issues are forfeited because appellant did not include similar headings in her opening brief. "California Rules of Court, rule 8.204(a)(1)(B), provides that a brief must '[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation

19

of authority.' 'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.'" (*Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 547 (*Herrera*).)

Appellant cannot cure the omission in her opening brief by discussing the issues under separate headings for the first time in her reply brief. (*Herrera*, *supra*, 67 Cal.App.5th at pp. 547-548 ["Here, the headings in the argument section of the appellant's opening brief did not raise preemption by the LMRA [Labor-Management Relations Act of 1947]. The heading in the appellant's reply brief stating LMRA section 301 preempts PAGA [Private Attorneys General Act of 2004] claims does not remedy the opening brief's omission"].)

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

Ronda McKaig, Judge

Superior Court County of Los Angeles

_____

Berglund & Johnson and Stephen M. Johnson, Anthony E. Vieira, for Plaintiff and Appellant.

Hall Hieatt Connely & Bowen and Mark B. Connely, for Defendants and Respondents, Thousand Oaks Surgery Center and Virtuoso Medical Management.

Cole Pedroza and Kenneth R. Pedroza, Nicole F. DeVanon; Reback McAndrews Blessey and Thomas F. McAndrews, for Defendant and Respondent, Kapil Moza.